**MAYNARD, MEREL & COMPANY, Inc. and Sealfon & Friedman, Inc., on behalf of themselves and all other shareholders of Carci Computab Systems, Inc., similarly situated, and in the right of Carci Computab Systems, Inc., Plaintiffs,**

v.

**Sebastian A. CARCIOPPOLO and Charles H. Davis and Carci Computab Systems, Inc., Defendants.**

No. 70 Civ. 2012.

United States District Court, S. D. New York.

Dec. 9, 1970.

Schwartz, Pollock & Sklaver, New York City, for plaintiffs.

Roth, Carlson, Kwit, Spengler & Mallin, New York City, for Cybermatics Inc.; Clark J. Gurney, and Gerald Raskin, New York City, of counsel.

MANSFIELD, District Judge.

This case arises out of the merger of Carci Computab Systems, Inc. ("Carci"), a manufacturer of business forms, into Cybermatics, Inc. ("Cybermatics"), a computer software firm, on May 22, 1970. Plaintiffs move pursuant to Rule 23, F.R.Civ.P., for a determination that the action is maintainable as a class action, for approval of proposed notice to members of the class, and for leave to supplement and amend their complaint. Defendants oppose plaintiffs' motions and urge that plaintiffs be required to post security before proceeding further with the action. For reasons stated below, the motions to designate as a class action and to require security are denied; the motion for leave to supplement and amend the complaint is granted.

The background of the case is as follows: until its incorporation under the laws of New York in August 1966, Carci was conducted as a sole proprietorship under the direction of defendant Sebastian A. Carcioppolo ("Carcioppolo"). In September 1967, defendant Charles H. Davis ("Davis") provided Carci with substantial additional capital in exchange for a large portion of its stock. In June 1969, Carci made a public offering of 172,000 of its shares through plaintiffs Maynard, Merel & Company, Inc. ("Merel") and Sealfon & Friedman, Inc. ("Sealfon"). For their services as co-underwriters, the two firms each received $50,625, and each was permitted to purchase 6,900 shares of unregistered Carci stock under investment letter at $.10 per share, subject to a payment to Carci of $2.00 per share at the time when the shares would be sold, or before June 30, 1975, whichever event first occurred. Carci committed itself to register these shares at a later date. Plaintiffs were also granted rights of first refusal with respect to the underwriting of any future public offerings of Carci. In addition, Sealfon received a financial consulting fee of $30,000 and the right to designate one director of Carci.

The initial performance of the Carci shares in the public market was disappointing: Carci offered the shares at $5.00 each but their price rose above that figure on only a few occasions and the stock generally traded at from $2.50 to $4.00 per share. The directors of Carci, concerned that its stock had not reached higher prices, sought the advice of investment bankers and other financial experts. From these consultations it appeared that Carci's performance would improve if it became part of a

larger organization having more extensive managerial and professional staffing. Carci considered hiring its own staff and undertaking a program of acquisition, but this course was ultimately rejected as too time-consuming and detrimental to its best interests.

In late October 1969, discussions began with officers of Cybermatics. Carcioppolo and the other Carci directors were impressed with Cybermatics' record and plans, and on November 17, 1969, an agreement in principle for the merger of Carci into Cybermatics was reached.

At that time, Carci stock was selling in the market at a range of $2.75–$3.25 per share. Carcioppolo nonetheless insisted that the Carci stock be deemed to have a value of $5.00 per share for purposes of the merger, a figure which was to be guaranteed to the shareholders by a "price protection" formula which was written into the merger agreement. This formula sought to insure that if Cybermatics stock, of which Carci shareholders were to receive .46 shares for each one share of Carci, declined in value to below $10.85 per share, the Carci shareholders would as compensation receive enough additional Cybermatics stock to guarantee their receiving $5.00 of Cybermatics stock, at its then market value, per Carci share. This formula in fact resulted in an increase in the amount of Cybermatics stock received by each Carci shareholder from the .46 shares per share of Carci originally contemplated to .54 shares per share of Carci.

For their part, Carcioppolo and Davis were to receive from Cybermatics cash and stock having a value of $3.79 for each share of Carci as of November 17, 1969. (The value of this package declined with the decline in the market for Cybermatics stock to $3.14 per Carci share on May 15, 1970, but no adjustment was provided for in the merger agreement.) In total, Carcioppolo and Davis received $600,000 cash and 93,890 Cybermatics shares. Cybermatics

agreed to file a registration statement covering these shares on various terms and conditions not material here. In addition, Carcioppolo was to be employed by Cybermatics at his present salary of $35,000 per year until March 31, 1971, thereafter at a salary of $40,000 per year until March 31, 1973, and therafter at a salary of $45,000 per year until March 31, 1975. Cybermatics agreed to continue to provide him with such fringe benefits as use of a new Cadillac automobile and a life insurance policy in the principal amount of $102,000. Davis signed an agreement not to compete with Carci in the New York metropolitan area after the merger.

Axelrod & Co., a New York Stock Exchange member firm, recommended the merger on the basis of an appraisal, and the shareholders approved it. Approximately 40% of the 191,775 publicly-held shares of Carci were voted, with 96% of the votes for the merger. The 69% of Carci's issued stock owned by Carcioppolo and Davis (427,250 shares) was voted for the merger. Thus opposition to the merger amounted to slightly more than 1% of the shares voted. This stock was held by 12 shareholders.

The consequences for plaintiffs of approval of the merger were that both firms lost their rights of first refusal to handle the underwriting of subsequent Carci public offerings, and Sealfon lost its right to designate one director of Carci. Carci's commitment to register the 13,800 Carci shares held by plaintiffs was assumed by Cybermatics with respect to the Cybermatics shares into which the Carci shares were to be converted.

This litigation was commenced on May 16, 1970, when plaintiffs filed their original complaint stating representative claims on behalf of other Carci shareholders similarly situated and derivative claims on behalf of Carci. Although the complaint opened with the allegation that it arose under § 10(b) of the Securities Exchange Act of 1934 and Rule

10b–5 promulgated thereunder and jurisdiction was premised on § 27 of that Act, the gist of the complaint was that defendants had breached their fiduciary duties to Carci under New York statutory and common law when they caused Carci to enter into the merger agreement. The only relief requested was injunctive relief to prevent the merger. On May 20, 1970, Judge Motley denied plaintiffs' motion for preliminary injunctive relief restraining the merger, stating that they had failed to demonstrate a likelihood of success.

On May 19, plaintiffs served an amendment to the complaint adding three paragraphs alleging that Carcioppolo and Davis had caused the proxy statement to be mailed to the Carci shareholders and had caused the Board of Directors of Carci to approve the merger and recommend its adoption by the shareholders, which conduct was alleged to constitute the employment of "a device scheme and artifice to defraud" and "an act, practice or course of business which would operate as a fraud or deceit upon the other shareholders of Carci." This amendment was effective under Rule 15(a), F.R.Civ.P., for it appears that no responsive pleading had been served by defendants when it was made. Since no more than one amendment as of course can be otained under Rule 15(a), when plaintiffs decided to file more extensive amendments to the complaint several weeks after the denial of their motion for preliminary injunctive relief, they were obliged to seek leave of court. On July 9, 1970, Judge Ryan denied such leave, noting that plaintiffs had ignored and not complied with Rule 11A of the Civil Rules of this court, which requires that in actions styled as class actions plaintiff move within 60 days for a determination that the action is maintainable as a class action. The denial was without prejudice to renewal of the motion at the time of making the Rule 11A motion.

## I. *The Motion to Designate as a Class Action*

The determination of whether an action may proceed as a class action is particularly important in view of the strengthened class action provisions of Rule 23, F.R.Civ.P., pursuant to which persons not actively represented in an action may be bound by the decision reached therein, Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Dolgow v. Anderson, 43 F.R.D. 472, 493 (E.D.N.Y.1968); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); cf. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Rule 23(a) (4) states that a class action may not be designated unless "the representative parties will fairly and adequately protect the interests of the class." We must be convinced that plaintiffs would vigorously prosecute the action on behalf of all members of the class. Purharich v. Borders Electronics Co., 11 F.R.Serv.2d 23a.52, Case 5 (S.D.N.Y.1968). "Since all members of the class are to be bound by the judgment, diverse and potentially conflicting interests within the class are incompatible with the maintenance of a true class action," Carroll v. American Federation of Musicians, 372 F.2d 155, 162 (2d Cir. 1967).

Even if the complaint were amended as plaintiffs request, it does not appear that plaintiffs would fairly and adequately protect the interests of the class which they seek to represent, i. e., the other Carci shareholders at the time of the merger. Their interests are potentially adverse to those of the other class members in that the harm which they have suffered from the merger is unlike that of any Carci shareholder and consequently the relief they most desire (rescission) might not be satisfactory to the others. For services rendered in the Carci public offering of June 1969, both plaintiffs received, in addition to substantial cash and stock commissions, rights of first refusal with respect to underwriting of future public offerings

of Carci. In addition, Sealfon received a financial consulting fee and the right to designate one director of Carci. Since the rights of first refusal and the one Carci directorship have not survived the merger of Carci into Cybermatics, the only way Merel and Sealfon can avoid losing them is by obtaining a mandatory injunction to undo the merger, which they now seek.[1] Their paramount interest in undoing the merger or in liquidating through other means the rights which they are threatened with losing creates a high potential for conflict with the interests of the other members of the class. Specifically, they are less likely than other former Carci shareholders to accept the offer of a cash settlement, even though such a settlement might be desired by other class members and in fact be in the best interests of the class. Both the original and amended complaints seek to undo a merger which has been, according to the representations of defense counsel in oral argument, extremely advantageous to the former Carci shareholders, since the price of Cybermatics stock has risen since the merger. (The range per share was $9.50 bid—$10 asked on December 4, 1970.)

The disparity of interest thus shown, standing alone, is an adequate basis for denying the motion to designate this action as a class action.[2] In addition, however, our attention has been directed to certain statements by plaintiffs which are reported in the affidavit of George G. Dempster, then Vice President, now President, of Cybermatics. He tells of a telephone conversation with Robert Sealfon of Sealfon & Friedman on the morning of May 6, 1970, in which "he [Sealfon] stated that he had read the proxy statement and as long as the public shareholders of Carci were receiving $5.00 worth of Cybermatics stock, the deal was a good one." (Dempster Aff. p. 2). Dempster also spoke on the telephone with Mr. Merel of Maynard, Merel & Co., who stated that he did not want $5.00 a share for his stock. "I don't care about the public," Merel continued. "I have a special axe to grind with Sal [Carcioppolo] and Chuck [Davis]. If I don't get satisfaction I'll stop the deal and satisfaction with me is money. It's as simple as that." (Dempster Aff. p. 2). Later that day, Dempster met with Merel at a restaurant for further discussion of the pending merger. This meeting was reported as follows:

"Mr. Merel stated that he had not yet read the proxy statement nor had he made any investigation of Cybermatics; nevertheless, he wanted to receive $10.00 a share for the 6,900 shares of Carci which he held. When I asked how he could justify demanding twice what the public shareholders of Carci were being offered and more than 2½ times what Messrs. Carcioppolo and Davis were receiving, he replied that he had determined that when he purchased his 'cheap stock' at 10¢ per share he had decided that he wanted to realize $69,000 for those shares." (Dempster Aff. p. 3).

After lunch, another meeting was held at the offices of Sealfon at which Merel, Sealfon, and Dempster were present.

"Mr. Sealfon stated, in substance, that he did not want to prevent the deal but merely wanted to be compensated for the time and effort he put into Carci. He stated that he felt he was

---

1. In noting this factor we deem it largely immaterial that Sealfon had not chosen to exercise the right to name a director prior to the merger.

2. Arguably, such an adverse interest should be dealt with by establishing subclasses, cf. Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966) (common stockholders and debenture holders), rather than by denying the motion to designate as a class action. However, as a subclass plaintiffs fail to meet the requirement of Rule 23(a) (1), applied to subclasses by Rule 23(c) (4) (B), in that the members of the alleged subclass are not "so numerous that joinder of all members is impracticable."

being pushed around by Messrs. Carcioppolo and Davis and had been for some time and that now he was in control of the situation. He said that although he was mad; he was not so mad that a little money would not soothe his anger." (Dempster Aff. p. 3).

▉ These admissions, differently interpreted but not denied by plaintiffs,[3] indicate beyond doubt that plaintiffs would not be likely to protect the interests of the class. Although a litigant is normally entitled to entertain a wide variety of motives for bringing a lawsuit, we cannot, in deciding whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," Rule 23(b)(3), F.R.Civ.P., overlook attitudes which reveal that a class action may be neither fair to other members of the class nor efficient for the resolution of their possible claims. Without intimating any view as to the merits of plaintiffs' securities law allegations, which they remain at liberty to pursue as individual actions, we do not believe that a class action is appropriate in this case. The three additional plaintiffs added by amendment do not affect this determination, for they appear to be in the nature of window-dressing or camouflage. There is no indication that Merel and Sealfon will transfer to the three additional plaintiffs one iota of the control they presently exercise over the conduct of plaintiffs' case in this lawsuit.

In light of the foregoing, the motion to determine that the action is maintainable as a class action is denied. Therefore, we do not reach the question of notice to members of the class.

II. *The Motion to Supplement and Amend the Complaint*

The amendments now sought are essentially the same as those sought before Judge Ryan in July: (1) the addition of three parties plaintiff, (2) the addition of Cybermatics as a party defendant, (3) the abandonment of derivative claims on behalf of Carci, (4) the elimination of Carci as a party defendant, (5) the addition of specific allegations as to the misleading and deceptive nature of the proxy statement, and (6) an amendment of the relief requested, substituting a mandatory injunction annulling the merger for the prohibitory injunction initially sought, and the addition of an alternative demand for money damages.

Competing interests are at play in our consideration of this motion. On the one hand, plaintiffs should not be foreclosed by formalism or technicality from including in their complaint theories of action or allegations of harm different from those originally alleged, particularly when the original complaint was hurriedly drafted, or when new facts have come to light or additional harm has occurred subsequent to the commencement of the action. On the other hand, plaintiffs should formulate their complaint definitively at an early stage in the proceedings so that defendant may have a full opportunity to prepare their defense and not be forced to accommodate themselves to helter-skelter pleading in which plaintiff gets a different idea of his claim every day. In general, however, we should not be hesitant "to allow amendments for the purpose of presenting the real issues of the case, where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced, and the trial of the issues will not be unduly delayed." 3 Moore, Federal Practice ¶15.08[2] (2d ed. 1968). Rule 15(a), after all, does provide that such "leave shall be freely granted in the interests of justice."

▉ Accordingly we grant leave to amend by adding the three new parties plaintiff because their claims arise out

3. Sklaver Aff. pp. 2, 4.

of the same transaction as the claims of Merel and Sealfon. They could have joined originally in bringing the suit, Seely v. Cleveland Wrecking Co. of Cincinnati, 15 F.R.D. 469 (E.D.Pa.1954), and we can see no way in which defendants will be prejudiced by their addition as plaintiffs. As indicated above, the willingness of these individuals to be added as plaintiffs does not persuade us that the action is any more worthy of class action designation than it was without them. We also grant leave to add Cybermatics as a party defendant, for it is clear that there is a close relationship between it and the original defendants, cf. County Theatre Co. v. Paramount Film Distrib. Corp., 166 F.Supp. 221 (E.D.Pa.1958), and Cybermatics, through its officer, George G. Dempster, has at all times been fully informed of the controversy with plaintiffs, Goodrich v. England, 262 F.2d 298, 301 (9th Cir. 1958), even though the gravamen of plaintiffs' compaint may be changed substantially by the amendments granted herein. If the motion to amend were denied, plaintiffs in all probability would commence a new action based on their present theory that § 10(b) has been violated. Thus it is sensible to grant them leave to amend their complaint with respect to their allegations of securities act violations and with respect to relief sought. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Finally, the prejudice to defendants arising from plaintiffs' abandonment of their derivative claims (thereby avoiding the onus of posting security under New York Business Corporation Law, McKinney's Consol.Laws, c. 4, § 627) does not warrant denial of the motion to amend, especially in view of the fact that Carci has been merged into Cybermatics.

■ Although it would be well within our discretionary power to condition the granting of leave to amend upon plaintiffs' posting of appropriate security for court costs and attorneys' fees, cf. Ther-

mal Dynamics Corp. v. Union Carbide Corp., 42 F.R.D. 607 (D.C.N.H.1967), we decline to do so in light of all the facts presently before us, including the comparative promptness with which amendments have been sought (first within two months of the commencement of the action, now within approximately six months thereof), the fact that the amendments are based in part on the consummation of the merger, which occurred after the original complaint was filed, and the fact that discovery and other pretrial procedures have not yet been initiated.

We therefore hold that the action is not maintainable as a class action, but that plaintiffs may supplement and amend their complaint to conform with the "Supplemental and Amended Complaint" proposed in their papers in all respects except for the "Class Action Allegations," ¶¶ 4–9, which are hereby stricken.

It is so ordered.