### WILLIAM PENN MANAGEMENT CORPORATION et al.

#### v.

### PROVIDENT FUND FOR INCOME, INCORPORATED, et al.

#### Civ. A. No. 74–1350.

United States District Court,
E. D. Pennsylvania.

April 28, 1975.

Stuart H. Savett, Philadelphia, Pa., for William Penn Management Corp. and Richard M. Somers, Jr.

William S. Rawls, Philadelphia, Pa., for Provident Fund for Income, Inc.

Patrick W. Kittridge, Philadelphia, Pa., for Provident Management Corp. and Douglas K. Porteous.

Philip N. Smith, Jr., Washington, D. C., for Channing Management Corp. and Channing Co., Inc.

## MEMORANDUM

McGLYNN, District Judge.

This action, grounded upon violations of Section 27 of the Securities Exchange Act of 1934 [1] and Section 45 of the Investment Company Act of 1940 [2], contains individual and class action counts. Presently before the court is plaintiffs' motion for class certification pursuant to the provisions of Federal Rule of Civil Procedure 23. For the reasons hereinafter stated, the plaintiffs' motion is denied.

Plaintiff Richard M. Somers, Jr., ("Somers") was employed by defendant Provident Fund for Income, Inc., ("Fund") until February, 1973. Plaintiff William Penn Management Corporation, Inc., ("Penn") is a corporation formed by Somers for the purpose of entering the investment advisory business.

Somers holds six and a fraction shares of stock in Fund and Penn holds sixty and a fraction shares. The shares held by Penn were transferred to it from the account of Somers. The net asset value of these shares, as of June 6, 1974, was approximately $235.00. All sixty-six and a fraction shares were originally acquired by Somers in April, 1973.

Defendant Fund is a mutual fund which, as of May 1, 1974, had outstanding more than 31,000,000 shares of stock owned by some 26,000 persons. As of December 31, 1973, the value of Fund's net assets was in excess of $108,000,000.

Defendant Douglas K. Porteous ("Porteous") was, prior to mid-1974, the president and sole owner of the stock of defendant Provident Management Corporation ("PMC"). PMC was, until mid-1974, the investment advisor and principal underwriter of defendant Fund. Porteous was also sole owner of defendant Pennsylvania Funds Corporation ("PFC") which was the prime distributor of Fund's shares.

This action was precipitated by the desire of defendant Porteous to relinquish his control over the Fund management. Knowing of Porteous' desire to terminate his ties with Fund, the Fund directors sought a new investment advisor.

Defendants Alex D. Reid, John D. Corrigan, Robert D. Crompton and John F. Lovejoy (the so-called independent directors) initiated the search for a new advisor through an evaluation of four prospective investment advisors: 1) Channing Management Corporation; 2) Keystone Custodian Funds, Inc.; 3) Oppenheimer Management Corporation; and 4) William Penn Management Corporation.

To assist in the selection and evaluation of the four candidates, the directors obtained the services of a financial consultant, Michael J. Robinson. After reviewing the qualifications of the four potential successors to PMC, Mr. Robinson recommended the selection of Chan-

1. 15 U.S.C. § 78aa (1971)

2. 15 U.S.C. § 80a–44 (1971)

ning Management Corporation, ("Channing") as the new investment advisor. On April 10, 1974, the directors recommended to Fund's Board that Channing be selected as the successor investment advisor. This recommendation was accepted by the Board on April 10, 1974. Channing, a wholly owned subsidiary of American General Insurance Company, was, at the time, managing seven mutual funds with combined assets of some $480,000,000. Plaintiff Penn, on the other hand, had never managed any mutual funds and had, in fact, never actually engaged in business as an investment advisor.

Pursuant to the April 10, 1974 Board decision, the Notice of and Proxy Statement for the 1974 annual meeting of Fund was sent to all stockholders. The notice recommended that the stockholders approve an Investment Advisory Agreement between Fund and Channing.

On May 30, 1974, plaintiffs filed a complaint charging that this "notice and Proxy Statement" mailed to Fund stockholders contained a number of misstatements of material fact and omitted to state other material facts. These misstatements and omissions are alleged to be violations of Section 27 of the Securities Exchange Act of 1934 and of Section 45 of the Investment Company Act of 1940. There is no allegation that the misleading or omitted statements have caused or will cause a financial loss to Fund.

Plaintiffs sought to enjoin Fund from holding the 1974 annual meeting scheduled to be held on June 7, 1974. On May 31, 1974, the parties stipulated that the annual meeting be held but that the election results not be certified until there was a full hearing on plaintiffs' motion for a preliminary injunction. A hearing on the motion was held on June 10, 1974 and the motion was denied.

At Fund's annual meeting on June 7, 1974, the stockholders approved the Investment Advisory Agreement between Fund and Channing.[3] As a result of this agreement, Channing now manages Fund's affairs and distributes its shares.[4]

Before the court is the plaintiffs' motion for a class action certification. The class sought to be certified is defined as all Fund shareholders, other than officers and directors of defendants, their subsidiaries and affiliates, who had the right to vote in person or by proxy at the 1974 Fund annual meeting of stockholders held on June 7, 1974 and all those persons having or acquiring beneficial interests in the shares of defendant Fund as of June 12, 1974.[5] To justify the maintenance of a class action, plaintiffs must satisfy each of the four requirements of subsection (a) of Rule 23 and one of three requirements of subsection (b). It is defendants' position that plaintiffs' claim fails to satisfy subsections (a)(3) and (a)(4).[6]

The defendants contend that plaintiffs are not typical shareholders and do not share a common interest with them because of Penn's status as disappointed bidder for the management contract. Moreover, defendants argue that plaintiffs acquired the stocks for the sole purpose of giving them standing to sue.

---

3. The stockholders were informed of this litigation by defendant Porteous who read a statement detailing the proceedings up to June 7, 1974. This was done pursuant to a request by counsel for plaintiff. Notes of Testimony, conference of May 31, 1974.

4. By virtue of the Investment Advisory Agreement, Channing acquired the business and assets of Provident Management Corporation. Channing Company (the parent company, also a defendant), through wholly owned subsidiary, (Channing-Pennsylvania Funds Corporation) has acquired all the assets of Pennsylvania Funds Corporation. In effect, Channing, or its related companies, is now the controlling party much the same as Porteous had been.

5. Amended and Supplemental Complaint at 7.

6. There is no dispute between the parties that the numerosity requirement of (a)(1) and the common question requirement of (a)(2) have been satisfied by plaintiff.

■ Neither the motive of the plaintiffs in acquiring the stocks nor their status as disappointed bidders disqualify them under the Typicality Requirements of Rule 23(a)(3) but they are factors to be considered in determining whether plaintiffs will "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4).

■ The constitutional guarantee of due process of law requires that no person be bound by a decision in a case in which he is not an actual litigant unless, inter alia, his interests are adequately represented. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). This concept of adequate representation is especially important in class action litigation under Federal Rule of Civil Procedure 23, Consequently, "adequate representation" requires, at a minimum, that the representative party have no interests which may conflict with those of the person he purports to represent. *Carroll v. American Federation of Musicians*, 372 F.2d 155 (2d Cir. 1967); *Airline Stew. & S Assn. v. American Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973); *Pennsylvania Company for Insurance v. Deckert*, 123 F.2d 979 (3d Cir. 1941).

■ The substance of defendants' argument on the issue of adequate representation is that plaintiffs' interests are so antagonistic to the interests of the remainder of the class that they cannot fairly and adequately represent the other shareholders.

The plaintiffs, on the other hand, contend that their additional interests do not disqualify them under Rule 23(a)(4). They argue to the contrary that their special interests give them increased zest with which to "wage judicial battle".[7]

Some additional facts gleaned from the deposition of plaintiff Somers are pertinent here. Prior to being fired from his position with Fund, Somers informed Porteous that he desired to obtain control of Fund (pp. 146–147). At and after the time he was fired, Somers took an active part in a committee of the Fund's shareholders which sought to wrest control of the Fund's management from Porteous, and communicated complaints to the Securities Exchange Commission (pp. 21–23, 25–27, 136–137, 222). Following his discharge in February of 1973, Somers purchased sixty shares[8] of the Fund in order to obtain literature and information from and about the Fund as an arguing basis. (pp. 35, 188–190).

In November 1973, after it became public knowledge that Porteous intended to reduce his participation in management, Somers organized Penn and submitted a bid for Fund's management contract. (pp. 29–30, 47). Penn had never managed a mutual fund (pp. 7–8, 182). Prior to the stockholders meeting in June, 1974, Somers discussed with certain Fund stockholders and salesmen the possibility of a proxy fight in opposition to the designation of Channing as the Fund's new investment manager. (pp. 21–23, 25–27, 31–36, 169, 173–174, 177).

Plaintiffs do not challenge the qualifications of Channing to be the investment advisor and there are no allegations that Fund could be managed more effectively or efficiently or that a change in the investment advisor would be beneficial to Fund. Thus, there is nothing which even suggests that a rescission of the Channing contract would be in the best interest of the shareholders. On the other hand, the investment advisory contract generates approximately $500,000 per annum in commissions and its rescission would provide plaintiffs a second opportunity to secure this lucrative contract without conferring any benefit on the shareholders as a class.

---

7. Plaintiffs' brief at 19.

8. Stock dividends later increased his holdings to sixty-six shares.

Because of the overriding objectives of Somers and Penn to obtain the management contract for Penn, they will be less likely than the other shareholders to accept a cash settlement even though such a settlement might be in the best interest of the class.

In *Maynard, Merel & Co., Inc. v. Carcioppolo*, 51 F.R.D. 273 (S.D.N.Y.1970), plaintiff underwriter sought to enjoin —and failing that, to rescind—a merger which extinguished its right to one directorship and the right of first refusal on future public offerings by the defendant. In denying a motion for class action certification, the Court stated: "[I]t does not appear that plaintiffs would fairly and adequately protect the interests of the class which they seek to represent, i.e., the other Carci shareholders at the time of the merger. Their interests are potentially adverse to those of the other class members in that the harm which they have suffered from the merger is unlike that of any Carci shareholder and consequently the relief they most desire (rescission) might not be satisfactory to the others. . . . Since the rights of first refusal and the one Carci directorship have not survived the merger of Carci into Cybermatics, the only way Merel and Sealfon can avoid losing them is by obtaining a mandatory injunction to undo the merger, which they now seek. Their paramount interest in undoing the merger or in liquidating through other means the rights which they are threatened with losing creates a high potential for conflict with the interests of the other members of the class. Specifically, they are less likely than other former Carci shareholders to accept the offer of a cash settlement, even though such a settlement might be desired by other class members and in fact be in the best interests of the class. 51 F.R.D. at 277–78.

This same theme was echoed against a somewhat different background in *duPont v. Wyly*, 61 F.R.D. 615 (D.Del. 1973) wherein the court, in denying a class certification stated that "the many faceted relationship between the [plaintiff] and [defendant] suggests that this suit may be an attempt to open still another front in a wide ranging battle having objectives unrelated to those shared by the class" and that plaintiff "would be less favorably disposed than other members of the class to any overtures of settlement." 61 F.R.D. at 622.

As long as plaintiffs' prayer is for rescission, there appear to be conflicting interests within the proposed class which preclude our finding that "plaintiff[s] would fairly and adequately protect the interests of *all* members of the proposed class as required by Rule 23(a)(4) . . ." *Guttmann v. Braemer*, 51 F.R.D. 537, 538 (S.D.N.Y.1970). "Unless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs. *Hansberry v. Lee*, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; cf. *Giordano v. Radio Corp. of America*, 3d Cir. 1950, 183 F.2d 558." *Dierks v. Thompson*, 414 F.2d 453, 456 (1st Cir. 1969).

We conclude that plaintiffs have not met the requirements of Rule 23(a)(4) and, therefore, the motion to maintain this action as a class action must be denied.