**Aubrey J. CROSS and John Lee Parks, Plaintiffs-Appellants,**

v.

**NATIONAL TRUST LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 76–1021.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 15, 1977.

Decided April 21, 1977.

A. G. Burkhart, Jr., Memphis, Tenn., for plaintiffs-appellants.

Albert C. Harvey, Memphis, Tenn., for defendant-appellee.

Before EDWARDS and LIVELY, Circuit Judges, and TAYLOR,[*] District Judge.

LIVELY, Circuit Judge.

This is an appeal by the plaintiffs in two actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. which were consolidated for trial in the district court. The plaintiffs, who are Negroes, were employed by the defendant (National) as life insurance salesmen. Both were assigned to defendant's "Crump District" which comprises an area of Memphis in which virtually all of the residents are black and most are poor. Urban renewal activities have also affected the stability of the neighborhood. National is primarily engaged in issuing insurance policies with relatively small death benefits which require frequent (often weekly) premium payments. Each sales agent is assigned a specific area or route, referred to as a "debit," in which to solicit sales and make premium collections.

In their complaints, which are virtually identical, the plaintiffs sought to proceed in class actions under Rule 23(b)(2), Fed.R. Civ.P., describing the class to be represented as "Negro persons who are employed, or might be employed by National Trust Life Insurance Company at its home office located in Memphis, Tennessee, who have been and continue to be or might be adversely affected by the practices complained of herein." Each complaint alleged the existence of the four conditions which are the prerequisites to a class action set forth in Rule 23(a), Fed.R.Civ.P.[1]

After charging generally that National followed policies and practices which discri-

minated against the plaintiffs and members of the class they sought to represent on the basis of race with respect to compensation, terms, conditions and privileges of employment, the complaints specifically alleged 1) that National failed to provide proper and suitable debit routes for black employees; 2) that National refused to allow black agents to work on white debits and assigned blacks to slums and ghetto areas; 3) that National penalized black agents for failure to produce business comparable to that in prosperous white neighborhoods and brought pressure to force resignations through this and other discriminatory practices; 4) that National had established a promotion and seniority system designed to limit opportunities of black employees; and 5) that the lines of progression and methods of hiring were structured to discriminate against blacks. Declaratory and injunctive relief was sought, along with back pay and attorney fees.

The district court found that the defendant had discriminated against both plaintiffs in that Cross was caused to resign for racially motivated reasons and Parks was discharged for violation of a company rule which was not uniformly enforced against white employees. The court found that the immediate supervisor of the plaintiffs, Sam Thornton, was "ill equipped to manage black people at the time they were placed on his staff . . .." Back wages were awarded to both employees from the time they left their employment with National until "they were afforded the opportunity of employment with equal salary potential or equal status . . .." The plaintiff Parks was also awarded back pay for a portion of the time he was employed upon a finding that he was discriminatorily compensated. The plaintiff Cross did not seek reinstatement, and the court found from

---

[*] The Honorable Robert L. Taylor, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. *Rule 23. Class Actions*
   (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

the evidence that Parks was not entitled to reinstatement.

After the plaintiffs had completed their proof the defendant moved for a directed verdict "on the class action aspect" of the case. The district court granted the motion insofar as the plaintiffs sought to represent any class of employees other than "sales employees in the Crump District, and other districts of the defendant company in the City of Memphis," holding that they could not represent all blacks, females, clerical employees or janitorial employees. The court stated that there were issues to be resolved as to whether or not the case was an appropriate class action even limited as set out above. At the conclusion of the trial, the court made further oral rulings on the class action issues. It noted that evidence of the percentage of black employment and the nature of that employment had been presented, which might have made out a prima facie case of city-wide discrimination by National. It ruled, however, that plaintiffs were not appropriate representatives for any Negroes seeking employment with National, suggesting that the proof should have detailed the tests used and policies of the company, rather than "just generalities." The court stated that the plaintiffs could at most represent only black sales agents who were in the first group under Mr. Thornton, but that this class was not numerous enough to justify a class action. It also noted that at least one black sales agent had successfully handled his work under Thornton.

The district court later filed written findings of fact and conclusions of law in which it held that neither plaintiff is an appropriate representative for a class action, "in the Crump District or in the defendant's operation." The court found that the requirements of Rule 23(a)(1) had not been met in that the evidence did not show a class so numerous that it would be impracticable to join its members. The court further found that the claims of the plaintiff are not typical of the claims of other members of the class as required by Rule 23(a)(3) and that the plaintiffs would not be proper representatives of the class under Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." This finding appears to have been based primarily upon the fact that Cross did not request reinstatement and that Parks had testified that he would return only "in a favored status and not as an ordinary debit insurance agent which representation in the class would require." The court also declined the request for attorney fees.

The plaintiffs have appealed the back pay awards, which they maintain are inadequate, and denial of class action status and attorney fees. The defendant has not appealed from the holding that it discriminated against the plaintiffs in violation of Title VII or from the back pay awards.

## THE CLASS ACTION RULING

■ A district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969). 3B Moore's Federal Practice, ¶ 23.50 at 1104–05. The Third Circuit held in *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), that the scope of review of a class action ruling is limited to determination of whether the mandatory requirements of Rule 23(a) have been met, and whether the district court has properly classified the type of class action sought to be maintained. There is no question of classification in the present case. The plaintiffs stated in their complaints that these were class actions described in Rule 23(b)(2), and they do not claim they were entitled to certification under any other classification. Thus, the issue for decision is whether the district court properly applied the criteria of Rule 23(a).

■ After carefully examining the evidence the court concludes that the judgment of the district court must be vacated. Though Parks attached conditions to his request for reinstatement, he did testify

that he would accept an "equitable debit." In Title VII cases, where discrimination is found, ". . . [t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), quoting from *Wicker v. Hoppock,* 6 Wall. 94, 99, 18 L.Ed. 752 (1867). Parks may not dictate the conditions under which he should be offered reinstatement. No debit agent has a guaranteed income after his training period is completed, and Parks is not entitled to one. However, he cannot be "made whole" unless he is offered a debit on the same terms as such territories are offered to white agents.

■ Since the district court's finding that the plaintiffs are not proper class representatives was based at least partly upon the finding that Cross did not desire reinstatement and Parks was not entitled to it, the entire ruling on the class action aspect of the case should be reexamined upon remand. In reconsidering its class action determination the district court should do so in light of several well established principles.

■ With respect to the requirement of Rule 23(a)(1) that the members of the class be so numerous as to make joinder of all impracticable, this court has held that a class of only 35 identified members satisfied Rule 23(a)(1) where the class was described as including prospective employees. *Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 298 ( 6 Cir., 1974). The description of the class sought to be represented by the plaintiffs in the present consolidated cases includes persons who "might be employed" by National and who have been or might be adversely affected by the company's policies and practices. The exact numbers of such a class are not known, but statistical evidence disclosed that National never had more than seven black sales agents in the City of Memphis, and all of these were assigned to the Crump District. The heart of plaintiffs' complaints was that National refused to assign black agents to any area but the poor, black neighborhoods of Memphis and did not permit them to transfer to more affluent districts which contained white residents. In the absence of such a policy it could reasonably be assumed that the company would receive more applications from black prospective agents than it did with such a policy in force.

The district court held that at most the plaintiffs could represent only the black sales agents who were in the first group assigned to Mr. Thornton and that this group was not large enough to permit a class action. Having thus limited the class, the district court found that the claims of the plaintiffs are not typical of those of other members of the class. In light of the district court's finding of discrimination against the plaintiffs, we believe it was improper to limit the class to the first group of black sales agents employed by the company. The complaints charge many company practices which have discriminated against Negroes. The total number of black employees of National Trust in Memphis is disproportionate to the black population of the area. Giving the complaints and evidence their fullest meaning, we conclude that the class action determination should have been made with respect to a class consisting of all present and prospective Negro sales agents of National in the City of Memphis.

■ We recognize that the class action determinations in the present case were made at the conclusion of a trial, whereas several of the cases cited by the plaintiffs have involved determinations at the pleading stage of Title VII actions. *E.g., Johnson v. Georgia Highway Express, Inc., supra.* Nevertheless, we conclude that the factual determination of the district court that the plaintiffs are not proper representatives of the class they seek to represent was based on too narrow a construction of their claim. Rule 23(a)(4) requires a determination of whether the plaintiffs will fairly and adequately protect the interests of the class. The fact that plaintiffs are no longer employees of the defendant does not

deprive them of standing to represent a class consisting of current and prospective employees. *Rice v. Gates Rubber Co.,* 521 F.2d 782 (6th Cir. 1975); *Roberts v. Union Co.,* 487 F.2d 387 (6th Cir. 1973); *cf. Tipler v. E. I. duPont deNemours & Co.,* 443 F.2d 125 (6th Cir. 1971). *See also Wetzel v. Liberty Mutual Insurance Co., supra,* and *Reed v. Arlington Hotel Co.,* 476 F.2d 721 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973). The contrary result in *Heard v. Mueller Co.,* 464 F.2d 190 (6th Cir. 1972), involved a discharged employee against whom the court found no discrimination had been practiced. Since the district court found that the termination of employment of both plaintiffs in the present case resulted from racial discrimination, they have standing to represent present and prospective black employees of defendant. In *Johnson v. Georgia Highway Express, Inc., supra,* the court held that a discharged black employee is a member of a class consisting of all black employees of his former employer and his claims of racial discrimination are typical of claims of the class. The court went on to state that whether the discharged employee will adequately represent the class is a question of fact to be determined in the usual manner.

In making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). If the district court determines that there is a proper class action and that the plaintiffs will adequately represent the class described herein, it may choose to limit the action to issues related to assignment and transfer of black sales agents in view of the fact that virtually all of the evidence was directed to these practices. Rule 23(c)(4)(A).

## THE BACK PAY AWARDS

In permitting back pay as a remedy for violation of Title VII Congress provided in part: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). Thus, though back pay is part of the "make whole" purpose of Title VII, *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 419, 95 S.Ct. 2362, the liability of an employer who has violated the act is limited by the actual or potential earnings of the person against whom the discrimination is practiced. This is an equitable equivalent of the legal requirement that a person claiming an injury mitigate his damages.

The district court based the back pay award to the plaintiff Cross on his average compensation, including bonus, during the 13-week period when his earnings with National were the highest. The award was reduced by the actual earnings of Cross as an automobile saleman. Back pay was cut off at the time Cross became a student carrying nine hours at Memphis State University while continuing to work as a salesman from 1:00 to 9:00 p. m. His studies led to employment in broadcasting which he held at the time of the trial and which he testified was satisfactory.

The district court awarded Parks back pay of $20 per week for 23 weeks of his period of employment by National on the finding that his pay during that time was less than that guaranteed to other sales agents during the early weeks of their assignment to a debit. The award to Parks of back pay after termination of employment was on the same basis as that to Cross. The district court cut off back pay at the time Parks became a full-time employee of Mutual of Omaha with earnings comparable to those at National.

Both plaintiffs argue that their awards should have been based on the earnings of white sales agents of National. Cross worked for National for seven months and Parks worked for ten months. The district court made no finding that either plaintiff was discriminated against in the matter of compensation, except for the original guarantee to Parks which was cov-

ered by the award. The burden was on the plaintiffs to prove any loss of earnings by reason of discrimination. Our examination of the evidence reveals that the plaintiffs failed to carry this burden. In the absence of such proof, the district court was justified in basing the back pay awards on their average earnings for a period which included their highest earnings. We find no abuse of discretion in the back pay awards.

The judgment of the district court is vacated, and the case is remanded for further proceedings. Parks must be offered reinstatement as outlined herein. The request for attorney fees is to be reexamined in light of the district court's ultimate findings and conclusions with respect to the class action issues.

James F. Schouman, Dearborn, Mich., for petitioner.

Charles W. Chapman, Washington, D.C., for intervenor Ann Arbor.

Fritz R. Kahn, Gen. Counsel, I. C. C., Peter A. Fitzpatrick, Christine N. Kohl, Edward Levi, Atty. Gen., U.S. Dept. of Justice, Robert B. Nicholson, Edward E. Lawson, Washington, D.C., for respondents.

Before PHILLIPS, Chief Judge, and WEICK and CELEBREZZE, Circuit Judges.