SCHMIDT ET AL., APPELLANTS, *v.* AVCO CORPORATION ET AL., APPELLEES.

(No. C-820858—Decided
January 25, 1984.)

*Messrs. Drew, Ward & Graf Co.,*
*L.P.A., Mr. Richard H. Ward* and *Mr.*
*William R. Graf,* for appellants.

*Messrs. Taft, Stettinius & Hollister,*
*Mr. Robert G. Stachler* and *Mr. Daniel*
*O. Conkle,* for appellee Avco Corpora-
tion.

*Messrs. Dinsmore & Shohl, Mr.*
*Mark A. VanderLaan* and *Mr. Stephen*
*S. Eberly,* for appellee Cincinnati Elec-
tronics Corporation.

DOAN, J. On March 20, 1981, ap-
pellants filed a complaint against ap-
pellees Avco Corporation ("Avco")
and Cincinnati Electronics Corporation
("C.E."). The complaint, containing five
claims for relief, requested the court to
declare the case to be a class action. On
June 19, 1981, appellants filed a "Mo-
tion for order determining that action be
maintained as a class action," accom-
panied by a supporting memorandum.
Both Avco and C.E. filed memoranda in
opposition to the motion. After an
evidentiary hearing, the trial court, in a
letter opinion, denied appellants' motion
to have the case certified as a class ac-
tion. It is from this decision, journalized
on October 4, 1982, that appellants have
timely appealed.

Appellants are former employees of
Avco's Electronics Division which was
located in Evendale, Ohio. On March 9,
1973, Avco sold the operation to C.E. At
the time of sale six hundred thirty-nine
salaried Avco employees were ter-
minated, but six hundred eight were im-
mediately hired by C.E. pursuant to the
purchase agreement. Appellants were
among those hired and are currently
employed by C.E. They seek to repre-
sent the interests of the six hundred
thirty-nine Avco employees who were
affected by the sale and, in reference to
the first and fifth claims for relief, pro-
pose a class that would consist of those
former Avco employees who were ter-
minated but then hired by C.E., in-
cluding those who have since retired or
otherwise terminated employment with
C.E. With respect to the second, third,
and fourth claims for relief, the class
would include those terminated Avco
employees who were not hired by C.E.
Their single assignment states that the
trial court erred in denying the motion
for an order certifying class action

status.[1] Pursuant to our discussion herein, we determine that the trial court did not so err.

Civ. R. 23 governs the institution and maintenance of a class action in Ohio. To date there have been relatively few Ohio cases construing Civ. R. 23, but as Ohio's rule is virtually identical to Fed. R. Civ. P. 23, federal authority is an appropriate aid to interpretation.[2] Fed. R. Civ. P. 23 has "as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action * * * [and] the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief * * *." 7 Wright & Miller, Federal Practice and Procedure (1972) 543, Section 1754. See *Califano* v. *Yamasaki* (1979), 442 U.S. 682. Many of the federal cases recommend that the trial judge apply a liberal construction to Fed. R. Civ. P. 23 and refuse certification only upon a clear showing that the suit does not merit class action treatment. *Alameda Oil Co.* v. *Ideal Basic Industries, Inc.* (D. Colo. 1971), 326 F. Supp. 98; *Esplin* v. *Hirschi* (C.A. 10, 1968), 402 F. 2d 94, certiorari denied (1969), 394 U.S. 928. The United States Supreme Court's recent pronouncement that a class action "may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied" suggests a more exacting approach. *General Telephone Co. of Southwest* v. *Falcon* (1982), 457 U.S. 147, 161. Many other lower federal courts have strictly construed the requirements of Fed. R. Civ. P. 23. *La Mar* v. *H & B Novelty &*

*Loan Co.* (C.A. 9, 1973), 489 F. 2d 461; *Insley* v. *Joyce* (N.D. Ill. 1971), 330 F. Supp. 1228; *White* v. *Gates Rubber Co.* (D. Colo. 1971), 53 F.R.D. 412. The Ohio Supreme Court has affirmed the dismissal of a class action suit where the trial court stated it could "find no compelling reason as to why it would be superior or advantageous to proceed in this forum with the class aspect of this cause." *Roemisch* v. *Mutual of Omaha Ins. Co.* (1974), 39 Ohio St. 2d 119, 120 [68 O.O.2d 80]. The court has also stated that the burden of establishing a cause's suitability for treatment as a class action rests squarely upon the party bringing suit. *State, ex rel. Ogan,* v. *Teater* (1978), 54 Ohio St. 2d 235 [8 O.O.3d 217].

In terms of reviewing class action decisions, the commentators have noted that Fed. R. Civ. P. 23 grants trial judges a broad range of discretion. See Cohn, The New Federal Rules of Civil Procedure (1966), 54 Georgetown L.J. 1204; Note, Class Actions — Federal Rule 23 Amended (1967), 31 Albany L. Rev. 127. As stated in *Shapiro* v. *Midwest Rubber Reclaiming Co.* (C.A. 8, 1980), 626 F. 2d 63, 71, certiorari denied (1981), 449 U.S. 1079, "a trial court has broad discretion in determining whether a class action may be maintained, and its determination will not be overturned absent a showing that it abused that discretion." See *Danner* v. *United States Civil Service Comm.* (C.A. 5, 1981), 635 F. 2d 427; *Cross* v. *National Trust Life Ins. Co.* (C.A. 6, 1977), 553 F. 2d 1026; *Windham* v. *American Brands, Inc.* (C.A. 4, 1977), 565 F. 2d 59, certiorari denied (1978), 435 U.S. 968. Thus, the test to be utilized in reviewing

---

[1] In its letter opinion the court stated that plaintiffs had satisfied only one of the requirements for certification of a class action, *i.e.,* that the proposed class was so numerous that joinder of all members would be impracticable. The court did not specify in what ways plaintiffs had failed to satisfy the other requirements.

[2] The only major difference is section F of Civ. R. 23, not found in Fed. R. Civ. P. 23, which provides that members of the proposed class may aggregate claims for jurisdictional purposes.

the lower court's decision in the case *sub judice* is whether there was a clear abuse of discretion in denying class certification.

With that general discussion of Civ. R. 23 and its federal counterpart completed, we turn our attention to the instant case.[3] To prevail in their motion for class certification, appellants first had to satisfy the four prerequisites of Civ. R. 23(A):

"Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, appellants had to show that the action came within the purview of at least one of the three types of class actions described in Civ. R. 23(B):

"(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

"(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudica-

tions or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

In their complaint appellants presented five claims for relief, as follows: (1) Avco refused to pay compensation under its separation pay policy to terminated employees hired by C.E.; (2) retirement benefits offered at termination under Avco's retirement income plan were not as described in booklets which contained "misleading, incomplete and inaccurate statements"; (3) payments made under the retirement plan of two percent interest on employee contributions withdrawn at termination were unconscionable; (4) insurance was purchased with retirement plan participants' contributions at "premium

---

[3] The threshold question, whether the denial of a motion for class action certification is a final appealable order, has been answered in the affirmative by the Supreme Court of Ohio in *Roemisch* v. *Mutual of Omaha Ins. Co.* (1974), 39 Ohio St. 2d 119 [68 O.O.2d 80].

rates not in the best interests of the class members"; and (5) C.E. did not provide "substantially equivalent benefits" to those provided by Avco. The claims for relief as presented in the complaint must be examined to determine whether the trial court abused its discretion in determining that appellants did not satisfy the requirements of Civ. R. 23.

The first prerequisite of Civ. R. 23(A) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." There is no general rule or "magic number" for determining how many parties make joinder impracticable. *Cypress* v. *Newport News General & Nonsectarian Hosp. Assn.* (C.A. 4, 1967), 375 F.2d 648. We agree with the trial court that the class as alleged by appellants, numbering six hundred thirty-nine members, is certainly large enough to make joinder impracticable. See *Miles* v. *N. J. Motors* (1972), 32 Ohio App. 2d 350 [61 O.O.2d 404].

The next element, popularly called the test of "commonality," is whether there are questions of law or fact common to the class. Civ. R. 23(A)(2). It is important to note that this provision does not demand that *all* the questions of law or fact raised by the dispute be common. Furthermore, the rule should be liberally construed, as the element of commonality is also required under Civ. R. 23(B), and class certification should not be defeated prematurely. See *Portman* v. *Akron Savings & Loan Co.* (1975), 47 Ohio App. 2d 216 [1 O.O.3d 287]. One Ohio court has found the requirements of Civ. R. 23(A)(2) satisfied where there was a "common nucleus of operative facts." *Miles* v. *N. J. Motors, supra.* The federal courts similarly appear to look for a common fact situation or generally common legal and factual questions. *Resnick* v. *American Dental Assn.* (N.D. Ill. 1981), 90 F.R.D. 530; *Johnson* v. *American Credit Co. of Georgia* (C.A. 5, 1978), 581 F.2d 526; *Sweet* v. *General Tire & Rubber Co.* (N.D. Ohio 1976), 74 F.R.D. 333. An analysis of the record *sub judice* reveals that appellants' claims do present factual and legal questions common to the proposed class and that the requirements of Civ. R. 23(A)(2) were satisfied. For example, all the claims stem from one transaction, *i.e.,* the sale of Avco's Evendale operation to C.E. and the resulting termination of employees by Avco and their hiring by C.E. The complaint also raises legal issues common to the class such as breach of contract,[4] breach of an administrator's fiduciary duty, and "unconscionability."

The third test to be satisfied is whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Civ. R. 23(A)(3). This subsection is closely related to Civ. R. 23(A)(2). *General Telephone Co. of Southwest* v. *Falcon, supra* (457 U.S.), at 157-158, fn. 13. Pursuant to our discussion of Civ. R. 23(A)(2), *supra,* we find that the requirements of Civ. R. 23(A)(3) were satisfied.

Civ. R. 23(A)(4) provides that a class action can be maintained only if "the representative parties will fairly and adequately protect the interests of the class." Federal courts have referred to this requirement as being of crucial importance in terms of ensuring due process to members of the proposed class who will not have their individual day in

---

[4] With reference to appellants' claim that Avco did not pay separation pay benefits, questions of breach of contract would concern only the subclass of those employees hired by C.E., since Avco did pay benefits to those who were not hired.

court.[5] *Scott* v. *University of Delaware* (C.A. 3, 1979), 601 F.2d 76; *Augusta* v. *Marshall Motor Co.* (N.D. Ohio 1977), 453 F. Supp. 912, affirmed (C.A. 6, 1979), 614 F.2d 1085; *Susman* v. *Lincoln American Corp.* (C.A. 7, 1977), 561 F.2d 86. The critical question under this section is whether there is a conflict or a lack of congruence among the proposed class members' interests. *Cross* v. *Natl. Trust Life Ins. Co.* (C.A. 6, 1977), 553 F.2d 1026, 1031. In the case *sub judice* there is just such a lack of congruence among appellants and others in the proposed class. Appellants seek to represent not only those who were hired by and remained with C.E. (their status), but also those who were hired but who have since quit, been laid off, transferred, discharged, or otherwise terminated by C.E. This presents representation problems with respect to appellants' fifth claim for relief which alleges that C.E. has not provided retirement and other fringe benefits "substantially equivalent" and "comparable" to those provided by Avco at the time of the sale. Since appellants are currently employed at C.E., it is reasonable to assume that they would not have the same interest in benefits, such as separation pay or disability benefits, as those who have left C.E. under circumstances that would make them eligible for those benefits. In addition, testimony at the hearing also reveals that with regard to their fifth claim, appellants are primarily concerned with the equivalency of retirement and life insurance benefits. They testified that they have little or no knowledge of other benefits provided by C.E. such as maternity benefits, sick leave pay, or medical insurance and that other members of the proposed class would have a greater interest in those benefits.

The failure to satisfy any one of the four prerequisites of Civ. R. 23(A) will defeat a motion for certification as a class action. Although there are significant defects in appellants' ability to satisfy the representation requirement, this problem applies only to the fifth claim and is not, therefore, necessarily of dispositive significance. We will thus proceed to the second step in determining eligibility for class action treatment, *i.e.,* the satisfaction of the requirements of at least one of the three subsections of Civ. R. 23(B). Civ. R. 23(B)(1) authorizes the use of the class action device when necessary to prevent possible adverse effects, either on the parties opposing the class or on absent class members, that might result if separate actions had to be brought. Appellants did not attempt below to bring their action under this subsection, and we agree that it is inapplicable. Civ. R. 23(B)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class" and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Appellants did attempt to invoke Civ. R. 23(B)(2) below, but we find that the subsection does not apply. Their complaint asked primarily for compensatory and punitive damages, and as stated in the Federal Advisory Committee Notes to Fed. R. Civ. P. 23, "the subdivision [(B)(2)] does not extend to cases

---

[5] Some Ohio decisions have not emphasized this vital requirement. For example, in *Gilmore* v. *General Motors Corp.* (C.P. 1973), 35 Ohio Misc. 36 [64 O.O.2d 180], the court discussed all of the requirements for a class action *except* adequacy of representation. Contra *Gross* v. *Standard Oil* (C.P. 1975), 45 Ohio Misc. 45 [74 O.O.2d 487], wherein the court denied class certification partially on the basis that attorneys acting as both plaintiffs and counsel could not adequately protect the interests of the class. The court noted that a finding under Civ. R. 23(A)(4) is an indispensable prerequisite to a class action.

in which the appropriate final relief relates exclusively or predominately to money damages."

Appellants have concentrated their efforts on an attempt to bring their cause within the ambit of Civ. R. 23(B)(3). That subsection provides that the questions of law or fact common to the members of the class must predominate over any questions affecting only individual members and that a class action is superior to any other available method of adjudication.[6] "[T]he predominance test * * * involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interest and the economy that can be achieved by allowing a multiple party dispute to be resolved * * * [as] a class action * * *." 7A Wright & Miller, Federal Practice and Procedure (1972) 44, 47, Section 1777. The trial court must evaluate the relative importance of the individual versus the common issues because it is only where the common issues predominate that economies can be achieved by means of the class action device. If there are too many individual issues, a class action could easily degenerate in practice into multiple lawsuits which would increase management difficulties and the risk of confusion. Where denial of class certification is grounded in substantial part upon the complexity of the individual issues presented and upon the unmanageability of the action, the trial court's decision will not be disturbed unless it is shown to have been clearly wrong. *Windham* v. *American Brands, Inc., supra* (565 F. 2d), at 65.

The factors for a trial court to consider in making a determination under Civ. R. 23(B)(3) include, but are not limited to: (a) the interest of the individual class members in controlling the litigation; (b) the extent and nature of any ongoing litigation involving the same matters; (c) the desirability of concentrating the adjudication of all the members' claims in the forum in which the class action is lodged; and (d) the management difficulties that may be encountered. Each of appellants' claims must be examined to determine the applicability of Civ. R. 23(B)(3). In making this examination, we are mindful of the United States Supreme Court's pronouncement that "nothing in either the language or history of Rule 23 * * * gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen* v. *Carlisle & Jacquelin* (1974), 417 U.S. 176, 177. More recently, however, the Supreme Court has stated that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of Southwest* v. *Falcon, supra* (457 U.S.), at 160. It seems clear to us that such a careful evaluation of appellants' claims is necessary and appropriate.

Appellants state in their first claim that on the date of sale Avco had in effect a written separation pay policy entitling employees to compensation if they were terminated due to a reduction in work force and that Avco refused to pay such compensation to those hired by C.E. The claim further alleges that the separation pay policy was "an inducement for each class member to remain in Avco's employ and constituted a binding contract between Avco and each class member." It first must be noted that this claim would require the creation of a subclass consisting of those terminated employees hired by C.E. Such a procedure is provided for by Civ. R.

---

[6] The Federal Advisory Committee Notes to Fed. R. Civ. P. 23 state that class action treatment is not as clearly called for in the situations to which this subsection relates as in Fed. R. Civ. P. 23(B)(1) or (B)(2).

23(C)(4), but the presence of subclasses can affect the trial court's ability to effectively manage a class action. Next, Avco argues that whether the policy "served as an inducement to remain in Avco's employ — so as to constitute a binding contract and not merely a gratuitous fringe benefit — is a question that can be answered only by analyzing the circumstance of each individual employee." Avco in effect argues that because the policy was a gratuitous promise, the doctrine of promissory estoppel applies, and the elements of inducement and reliance would have to be proven as to each individual member of the proposed class.[7] Appellants respond that although they used the word "inducement" in the complaint, the separation pay policy constituted a unilateral contract in which the essential elements are offer and acceptance and that Avco's offer to pay separation benefits was accepted by each employee's continued employment. Thus, under contract law principles individual issues of inducement and reliance would not be involved. We have examined the law in Ohio, and although it is well-settled that pension plans give rise to contractual rights (see *Luli* v. *Sun Products Corp.* [1979], 60 Ohio St. 2d 144 [14 O.O.3d 384], and *Cantor* v. *Berkshire Life Ins. Co.* [1960], 171 Ohio St. 405 [14 O.O.2d 157]), we can find no court which has been presented with the issue and has held that an employer's promise to pay severance benefits under these circumstances constitutes a contract. It is by no means certain, therefore, that the first claim would be decided under the

law of contracts. It thus may be viewed as raising the doctrine of promissory estoppel with its attendant issues of individual inducement and reliance.

Even if contract principles were controlling, the first claim raises individual issues concerning the proposed class members' awareness of the offer to pay separation benefits. In discussing unilateral contracts, the Restatement of the Law 2d, Contracts (1981) 134, 135, Section 53, Comment *c* states: "The offeree's conduct ordinarily constitutes an acceptance in such cases *only if he knows of the offer.*" (Emphasis added.) It has been held that an employer's publication and distribution to its employees of booklets describing a severance pay plan was sufficient to permit an inference that all employees continued their employment with knowledge of the offer. *Schlosser* v. *Allis-Chalmers Corp.* (1978), 86 Wis. 2d 226, 271 N.W. 2d 879. See *Alfara* v. *Stauffer Chemical Co.* (1977), 173 Ind. App. 89, 362 N.E.2d 500. In the case *sub judice,* however, appellants have made no assertion either in their complaint or at the certification hearing that the severance pay policy plan was published or generally distributed to Avco employees. Thus, the claim raises the possibility of an issue of proof as to each individual class member's awareness of the policy.[8]

The final potential problem with the first claim concerns eligibility under the plan. The policy states that "[t]he purpose and intent of this policy is to specify benefits including compensation for a reasonable amount of time *while seeking other employment* in the event an em-

---

[7] The doctrine of promissory estoppel is set forth in Restatement of the Law 2d, Contracts (1981) 242, Section 90, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

[8] This appellate district has held that where an employee was aware of the conditions of an agreement by his employer to make payment of a bonus, the agreement was binding. *Doberrer* v. *A. M. Harris Industries, Inc.* (1971), 28 Ohio App. 2d 71 [57 O.O.2d 128].

ployee is laid off due to a reduction in force." (Emphasis added.) It is certainly possible to construe the policy to mean that the search for other employment is a condition precedent to payment of benefits. It would then be necessary to determine which of the six hundred eight employees hired by C.E. also looked for other employment. This would, of course, involve evidence as to each individual.

From the discussion, *supra,* it is clear that appellants' first claim raises significant individual issues.

The second, third, and fourth claims concern Avco's pension plan. The second claim alleges that Avco published booklets describing the pension plan which contained misleading, incomplete, and inaccurate statements and that Avco's failure to comply with the booklets' promises constituted a breach of contract. Since participation in the plan was voluntary, Avco argues that each individual in the proposed class would have to establish that he was indeed a participant. Appellants have recognized this problem and propose the creation of a subclass. As stated above, the creation of subclasses can affect the manageability of a class action.

Avco also argues that the second claim raises the issue of fraud which would require proof of each employee's reliance on the alleged misrepresentations contained in the booklets.[9] We cannot agree that appellants pleaded fraud. The second claim clearly alleges breach of contract and contains no allegation of fraud nor of bad faith or intent to deceive (the essence of fraud) on Avco's part. Nor did appellants make any such allegations at the hearing on class certification. Avco responds that regardless whether the claim raises fraud,

proof of individual reliance would still be required. We do not agree. Although the claim involves booklets describing the pension plan and not the plan itself, this court has held that booklets issued by an employer to its employees describing a pension plan "constituted a continuing offer on the part of the company which was continuously accepted by employees who preserved their status with the company." *Sigman* v. *Rudolph Wurlitzer Co.* (1937), 57 Ohio App. 4 [10 O.O. 17]. As discussed *supra,* in Ohio contract principles apply to pension plans, and the issue of individual reliance is therefore not raised by the second claim.

Appellants' third claim for relief asserts that payment under the pension plan of only two percent interest on withdrawn employee contributions was "unconscionable." They admit that there are individual issues in this claim, *i.e.,* the necessity of differentiating between those employees who withdrew their contributions from those who did not and suggest that another subclass be created pursuant to Civ. R. 23(C)(4).

The fourth claim, alleging that the administrator of the pension plan misused pension plan contributions by purchasing insurance policies at premium rates not in the best interests of plan participants, raises no apparent issues requiring a determination as to individual members of the proposed class.

The fifth claim, against C.E., alleges that C.E. has not provided retirement and other fringe benefits "substantially equivalent" or "comparable" to those provided by Avco at the time of sale and would require the creation of a subclass consisting only of those hired by C.E. The claim refers to Avco's assurance in writing made prior to the sale that employees hired by C.E. would be given

---

[9] As stated in the Federal Advisory Committee Notes to Fed. R. Civ. P. 23, "[a] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."

comparable benefits, to C.E.'s written assurance to its new employees, made at the time of sale, that they would be given "substantially equivalent benefits," and to the purchase agreement making the same promise. Appellants did not elaborate in either their memoranda or at the hearing on class certification as to C.E.'s promise to its new employees or the purchase agreement, but they did state that Avco's promise referred to a notice posted on the bulletin board at the Evendale plant in early March of 1973. On appeal appellants have argued that the theory of recovery in the fifth claim is third-party contract and individual issues would not be involved. They did not raise this theory in their complaint, however, and in their memorandum in support of the motion for class certification specifically alleged that "plaintiffs relied on these promises in taking employment with C.E." We cannot say that it is certain from the evidence presented below that as a matter of law only contract principles would apply to the fifth claim. Thus, the claim's resolution could involve individual issues as to which employees saw the notice posted on the bulletin board and relied upon it in accepting employment with C.E.

The question of damages, assuming that the case *sub judice* was tried as a class action and judgment was entered against appellees, is also important in determining whether class certification is appropriate under Civ. R. 23(B)(3). If Avco were found to be liable on the first claim, the amount of separation pay benefits due to class members would depend upon such individual factors as salary and length of service at Avco at the time of termination. Similarly, the amount of retirement benefits due to those who withdrew their contributions would require individual determination as to amount contributed. There are also complex individual issues as to appellants' fifth claim. If the benefits at C.E. were found not to be "substantially equivalent" to those at Avco, the computation of damages would involve an analysis as to the type of benefits (such as medical and life insurance, severance pay, and retirement pay) each individual was entitled to and received at Avco compared to the type of benefits entitled to and received at C.E. With a subclass numbering some six hundred eight members, this analysis would present serious management difficulties.

The preceding discussion has revealed the following problems with appellants' attempt to have their cause certified as a class action under Civ. R. 23: the ability of appellants to fairly and adequately protect the interests of the proposed class, the creation of multiple subclasses, and the presence of complex individual issues, including difficulties in computing damages. The class action is a laudable instrument, but where there is inadequacy of representation and a predominance of individual over common issues, the class action goals of fairness, economy, and efficiency are lost. Given the complex nature of this proposed class action and the expenditure of judicial resources which would be incident to its administration, we cannot find that the trial court abused its discretion in determining that appellants did not fully comply with the provisions of Civ. R. 23. The single assignment of error is accordingly overruled, and the judgment below denying class certification is affirmed.

*Judgment affirmed.*

PALMER, P.J., and SHANNON, J., concur.