Jacqueline CHESHER, et al., Plaintiffs,

v.

Tom NEYER, Jr., et al., Defendants.

No. C–1–01–566.

United States District Court,
S.D. Ohio,
Western Division.

May 13, 2003.

Terrence Lee Goodman, Stanley Morris Chesley, Renee Ann Infante, Paul M. De Marco, Waite, Schneider, Bayless & Chesley, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for plaintiffs.

Louis Francis Gilligan, Jamie M. Ramsey, Keating, Muething & Klekamp, Cincinnati, OH, Stephen James Patsfall, Stephen Michael Yeager, Patsfall, Yeager & Pflum LLC, Marc David Mezibov, Michael N. Budelsky, Sirkin, Pinales, Mezibov & Schwartz, John Charles Scott, Joseph T. Mordino, Faulkner & Tepe, Lawrence Edward Barbiere, Schroeder, Mundrell, Barbiere & Powers, Cincinnati, OH, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification (doc. 30), Defendant Parrott's Memorandum in Opposition (doc. 46), Hamilton County's Memorandum in Opposition (doc. 49), Defendant Condon's Memorandum in Opposition (doc. 50), and Plaintiffs' Replies (doc. 70 & 73). The Court held a hearing on Plaintiffs' Motion on May 7, 2003.

The following facts have been derived from the various pleadings, motions, and discovery created during the course of this litigation. This lawsuit involves Plaintiffs who are family members of deceased relatives held in custody of Hamilton County at the Hamilton County morgue during a five-month period ending January 2001 (doc. 31). Plaintiffs allege that Defendants either permitted or engaged in the practice of posing, disrupting, and photographing the remains of their relatives (*Id.*). Plaintiffs also allege that crime scene photographs and autopsy photographs of their relatives were illegally released to the public (*Id.*). Plaintiffs' Amended Complaint, filed March 28, 2002, names as Defendants Hamilton County, Chief Deputy Coroner Robert Pfalzgraf, Staff Pathologist Gary Utz, Administrative Aide to the Coroner, Terry Daly, Administrator Rhonda Lindeman, (collectively, hereinafter "Hamilton County" Defendants), Hamilton County Cor-

oner Carl L. Parrott, Pathologist Jonathan Tobias, and Thomas Condon (*Id.*).

Plaintiffs are either family members whose deceased relatives were posed and photographed by Defendant Condon, or whose deceased relatives were depicted in autopsy or crime scene photographs that were found in the possession of Defendant Condon. Plaintiffs' Motion seeks certification of the following class:

> the family members and estates of all the deceased whose bodies were accessed, viewed, manipulated, or photographed by Thomas Condon, by Jonathan Tobias, or by one of their agents between August 2000 and January 2001, while such bodies were in custody of the Hamilton County Coroner's Officer, without permission from the legal representatives of the deceased (doc. 30).

Plaintiffs further seek to designate Plaintiffs John T. Brady and Mary Smith to serve as class representatives, and their current counsel as class counsel (*Id.*).

■ The district court has broad discretion in deciding whether to certify a class. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Maintainability as a class action may be determined by the pleadings, although it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met. *Id.* at 160, 102 S.Ct. 2364.

■ The party seeking to utilize the class action device bears the burden of proof. *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976). In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). *Id.* In the case at hand,

Plaintiffs posit that they have met the requirements under the subcategory of Rule 23(b)(3).

## I. Requirements of Federal Rule of Civil Procedure 23(a)

In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.

### A. Rule 23(a)(1): Numerosity

■ The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R.Civ.P. 23(a)(1). The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992); *see also Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 63 (S.D.Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. *Senter,* 532 F.2d at 523. Instead, the court must examine the specific facts of each case. *General Tel. Co. of Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." *Senter,* 532 F.2d at 523. This court, in *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 105 F.R.D. 506 (S.D.Ohio 1985) found that as few as twenty-three class members could satisfy

the requisite numerosity. *Id.* at 508 ("Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.")(*citing Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1968)).

Plaintiffs contend that their proposed class meets the numerosity requirement because there were at least 333 bodies at the morgue between August 2000 and January 2001, which they allege Condon had access to (doc. 30). Plaintiffs, based on year 2000 Census figures, state that the average family in Hamilton County was three, and that, on average, Hamilton County residents had at least three relatives not living with them (*Id.*). Extrapolating these figures and applying them to the 333 bodies, Plaintiffs argue that they clearly have a class number in excess of 1,000 people (*Id.*).

At the hearing, Plaintiffs' counsel argued that at his criminal trial Condon stated that he had taken 1,000 photos, but that Plaintiffs' counsel have only 317 total. Consequently, they argued, there may be more class members whose relatives were accessed, viewed, manipulated, or photographed. Plaintiffs' counsel further argued that Condon had a list of symbolic objects to pose with bodies, and that not all of the objects can be found in the 317 photos which they have at this time. Therefore, they argued, this offers further basis to suspect that more class members could be involved in the case.

Defendant Condon argues that Plaintiffs' estimate lacks basis because there is no allegation that he was in the morgue area more than five days during the 184–day period in question (doc. 50). Defendant Parrott argues similarly that Plaintiffs' calculations are not based upon reasonable inference, but rather pure speculation (doc. 46). Parrott adds that the proposed class would include families of decedents who were examined by Tobias legally and in the scope of his duties as forensic pathologist (*Id.*). The Hamilton County Defendants argue that Plaintiffs' definition of "family members" is broader than the proper definition of next surviving kin (doc. 49)(*citing Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37 (1990)).

■ The Court finds that basing the universe of potential class members on what is known at this time, that at least nine of the bodies were photographed with props. If those nine people have at least three next surviving kin, the class size is twenty-seven. However, this calculation excludes the real possibility that there are yet undiscovered photographs, or that further discovery could reveal a larger number of bodies that were accessed, viewed, or manipulated. Plaintiffs allege that Condon knew the keypad code of the mortuary and thus had access to the building at any time during the five-month period. Speculation aside, the Court finds that Plaintiffs have presented evidence supporting a reasonable inference that there is a class of at least twenty-seven people. The class can be tailored to exclude those bodies properly accessed by morgue employees in the course of their legitimate duties. Such a class size is adequate to render joinder inconvenient and to satisfy the numerosity requirement. *Basile,* 105 F.R.D. 506. Additionally, it is known that the official autopsy or death scene photos of at least four decedents were found in the possession of Thomas Condon. Using the same assumption, at least another dozen class members could have similar claims based upon the lack of security at the morgue. The numerosity requirement is met in this case.

### B. Rule 23(a)(2): Commonality

■ In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." *Day,* 144 F.R.D. at 333 (quoting *Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333, 335 (N.D.Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 3.10 at 3–50 (3d ed.1992). There

need be only a single question of law or fact common to all members of the class. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988).

Plaintiffs' Motion includes a number of legal and factual issues that they argue are shared by class members (doc. 30). At the hearing, Plaintiffs argued that every class member shares the common legal question of whether Defendants had a legal duty under Ohio Revised Code Chapter 313 to protect the bodies of their loved ones, whether the County is entitled to sovereign immunity from state claims under Ohio Revised Code Chapter 2744, whether Defendants showed deliberate indifference to the known rights of Plaintiffs under *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir.1991), and whether there was a conspiracy and cover-up in a manner that "shocks the conscience" violating substantive due process rights under 42 U.S.C. § 1983. Plaintiffs further argued that every proposed class member was affected by the same factual issues, including the security procedures at the morgue, the lack of consent for the alleged activities, and whether the risk of serious harm was obvious to Defendants.

At the hearing, the Hamilton County Defendants argued that there are distinctly different factual and legal issues applying to proposed class members. They argued that of the fourteen bodies identified in photographs in possession of Condon, nine were subjects of posed photography, four were subjects of standard official scene-of-death or autopsy photographs that were in the possession of Condon, and one was a mug-shot of a decedent that is a public record. Thus, they argued, there are three distinct groups represented only among the initial fourteen cases. Hamilton County Defendants further argued that Plaintiffs' proposed class definition is based on the theory that other bodies might have been accessed, rather than on the certainty that other bodies indeed were accessed. They argued that if such other class members exist, they do not have a claim until they have discovered that they have a claim. Finally, Hamilton County Defendants argued that as a matter of practicality creating a class action would create a quagmire for the currently-named Plaintiffs.

■ The Court does not find Defendants' arguments on the question of commonality well-taken. Plaintiffs have adequately established that common legal and factual issues exist. Under *Day* it is clear that only one common policy need be at issue. 144 F.R.D. at 333. The Court finds that the County morgue policy of security, or lack thereof, that created access for Condon to the bodies, records, and official autopsy/scene-of-death photographs, is a shared issue by all members of the class. This finding alone is adequate to support the requisite commonality. The Court likewise finds well-taken the analogy to *Fernald*, where the release of radioactive material from a uranium processing plant material affected people living and working in proximity to the plant as well as neighboring property values. *In re Fernald Litigation*, 1986 WL 81380 (S.D.Ohio 1986). The Court approved two subclasses, one class incorporating all of the people within a five-mile radius of the plant who had been exposed, and a second incorporating all property owners within a five-mile radius of the plant. *Id.* In a similar fashion, the Plaintiffs here seek to create a class of people exposed to the conduct of Defendants Condon and Tobias. Though Defendants argue that Plaintiffs' class is based only on possible exposure rather than known exposure, the Court finds that at the class certification stage it is inappropriate to evaluate the proof of exposure. Rather, the question at the class certification stage is whether the alleged exposure can constitute a common issue shared by class members. The Court answers this question in the affirmative. To the extent that exposure to such conduct was different in some cases, subclasses can be tailored. The Court will now proceed with an analysis of the next prerequisite.

## C. Rule 23(a)(3): Typicality

■ Rule 23(a)(3) also requires that "claims or defenses of the representative par-

ties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. *Senter*, 532 F.2d at 525 n. 31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. 1 Newberg, *supra*, § 3.13, at 3–75. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* at 3–76.

This analysis is necessarily intertwined with the analysis of commonality. Plaintiffs proffer two class representatives who they say represent the two subcategories of class members in this case. Plaintiffs posit that proposed representative John T. Brady represents those whose deceased relatives were accessed, manipulated, photographed, or viewed by Defendant Condon. Plaintiffs state that because Brady's deceased relative was subject to each of those alleged activities, Brady can represent class members with deceased relatives subjected to any one or combination of the activities. Plaintiffs propose Mary Smith to serve as representative for those class members with relatives whose official death scene or autopsy photographs were found in Condon's possession.

■ The Court finds that the claims of the two proposed class representatives arise from the same security practices of the morgue that resulted in the exposure of the bodies of their deceased relatives to the course of conduct of Defendants Condon and Tobias. As such, the Court finds their interests to be aligned with those of the represented group, and that their claims meet the typicality requirement of Rule 23(a)(3). This leads to the final prerequisite of class certification, adequacy.

#### D. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4).

There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525; *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement.

Plaintiffs Brady and Smith clearly have common interests with unnamed members of the class, as they share a common complaint resulting from the same course of conduct. At the hearing, Plaintiffs stated that Brady and Smith attended every day of the criminal proceedings against Defendant Condon, as evidence of their vigorous involvement in the case. The Court finds that Brady and Smith are adequate representatives to fairly protect the interests of the class.

Therefore, the Court concludes that the prerequisites to Rule 23 have been met in this case. This does not end the Court's analysis, however. Once it is determined that the prerequisites to Rule 23 have been met, the Court must determine if the case is of a type which can be certified.

#### II. The Requirements Federal Rule of Civil Procedure 23(b)(3).

Rule 23(b)(3) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concern-

ing the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ As discussed above, there are a number of issues which are common to the class as a whole. When weighed, on balance, the Court concludes that these issues predominate over any individual issues which might arise. Given the nature of the claim involved, the Court concludes that the interest of members of the class in individually controlling the prosecution of separate actions would not be particularly great. Certification will permit the resolution of predominate common issues through a class trial. Individual trials would require the Court to hear the same evidence on liability, punitive damages, and classwide emotional distress, causing the parties and the Court to waste time and litigation expenses. The Court finds well-taken Plaintiffs' argument that class certification is superior to any other method of resolving the matter as it will promote economy, expediency, and efficiency. Finally, the Court concludes that there should not be many unusual difficulties in the management of such a class action. Accordingly, the Court concludes that a class action is the proper vehicle for such a suit.

### III. Conclusion

Having heard the positions of the parties at the May 7, 2003 hearing, and having considered their respective positions, the Court finds that this matter should be conditionally certified as a class action. Plaintiffs have met the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b)(3).

Accordingly, the Court hereby GRANTS Plaintiffs' Motion for Class Certification (doc. 30), conditionally CERTIFIES this case as a class action pursuant to Fed.R.Civ.P. Rules 23(a) and (b)(3), and DEFINES the class to include the family members and estates of all the deceased whose remains, for other than a proper government purpose, were accessed, viewed, manipulated, or photographed by Thomas Condon, Jonathan Tobias, M.D., or one of their agents between August 2000 and January 2001 (inclusive) while such bodies were in the custody of the Hamilton County Coroner's Office, without permission from the legal representatives of the deceased. Such definition is subject to modification. Plaintiffs will carry the burden of proving exposure to Defendants' improper conduct. The Court further DESIGNATES Plaintiffs John T. Brady and Mary Smith to serve as class representatives, and DESIGNATES Stanley M. Chesley, Renee A. Infante, Paul M. DeMarco, and Alphonse A. Gerhardstein to serve as class counsel.

SO ORDERED.