## In re Kroger Co.
## Shareholders Litigation
*[Cite as 7 AOA 13]*

*Case No. C-890271*
*Hamilton County, (1st)*
*Decided October 24, 1990*

*Gene I. Mesh, Gene Mesh & Associates, 3133 Burnet Avenue, P.O. Box 29073, Cincinnati, Ohio 45140, for Plaintiffs-Appellants.*

*Michael B. Siegler, 120 East Fourth Street, Cincinnati, Ohio 45202, Abbey & Ellis, 212 East 39th Street, New York, New York 10016, Berger & Montague, P.C., 1622 Locust St., Philadelphia, Pennsylvania 19103, Wolf, Popper, Ross, Wolf & Jones, 845 Third Avenue, New York, New York 10022, and Pomerantz, Levy, Haudek, Block & Grossman, 295 Madison Avenue, New York, New York 10017, for Plaintiffs-Appellees.*

*Thomas B. Ridgley, Vorys, Sater, Seymour & Pease, 2100 Atrium Two, 221 East Fourth Street, Cincinnati, Ohio 45202, for Defendants-Appellees.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcripts of the proceedings, the briefs and the arguments of counsel.

Plaintiffs-appellants Kenneth Peller and Sidney Kaufman have taken the instant appeal from the order of the trial court certifying this action as a class action and from the court's entry of judgment approving the settlement of the class action and awarding plaintiffs attorneys' fees and expenses. The appellants challenge on appeal the certification of the action as a class action, the trial court's exercise of discretion in approving the settlement, and the award of attorneys' fees and expenses.

Defendant-appellee The Kroger Co. ("Kroger") is a publicly-held corporation that owns and operates a chain of retail supermarkets across the country. The appellants are holders of shares of Kroger common stock, as are the plaintiffs-appellees, who are also parties with Kroger and its fourteen-member board of directors to the challenged settlement agreement and who join with Kroger and the board in defending the judgment entered below.

The events leading to the filing of the actions underlying the instant appeal are substantially undisputed. In 1986, Kroger began restructuring its operations by, *inter alia*, reducing the size of its general offices, repositioning assets, and selling assets to facilitate the company's repurchase of shares of common stock on the open market. During the second half of 1988, discussions regarding restructuring turned to & proposed distribution to shareholders. Those discussions were quickly brought to a head on August 11, 1988, when Kroger learned that a partnership controlled by Herbert H. Haft ("Haft group") had filed with the Federal Trade Commission ("FTC") an application under the Hart-Scott-Rodino Antitrust Improvements Act to purchase a significant number of the approximately seventy-eight million shares of Kroger common stock outstanding.

On August 31, 1988, a special meeting of the Kroger board of directors was called to

advise the board that Kroger was a viable takeover candidate and to introduce a restructuring proposal developed by Kroger management in consultation with Goldman, Sachs & Co. ("Goldman Sachs"), the company's principal financial advisor. The proposal contemplated a distribution to shareholders which, management asserted, would give holders of Kroger common stock "significant immediate value" for their shares while preserving their equity interests. The board also discussed the risks of the proposed shareholder distribution which, for the company, entailed the assumption of substantial debt, the loss of its "A" credit rating with an attendant increase in the cost of borrowing, operation of the company on a cash-flow basis, a decrease in expenditures, and the disposal of certain under-productive assets.

On September 12, 1988, the FTC announced its approval of the Haft group's application to purchase up to $15 million or fifteen percent of Kroger common stock. The next day, Kroger disclosed in a press release that its directors were "actively exploring" a restructuring plan that would involve the distribution to shareholders of a special dividend on each share of common stock, consisting of $40 in cash and a twenty-year deferred-interest junior subordinated debenture in the principal amount of $17 with an intended trading value of $8 per share on a fully-distributed basis. Two days later, the first of six shareholders actions against Kroger and its board of directors was filed.

On September 19, one week after receiving FTC approval on its Hart-Scott-Rodino application, the Haft group offered a package of cash and securities valued at $55 in exchange for each share of Kroger common stock. On September 20, the investment firm of Kohlberg Kravis Roberts & Co. ("KKR") submitted an offer to Kroger, proposing an exchange of cash and securities valued at $58.50 for each share of Kroger common stock.

On September 23, 1988, the Kroger board of directors met to consider the Haft group and KKR offers and the restructuring proposal. Goldman Sachs presented an analysis of the restructuring proposal which showed that the long-term intrinsic value of the proposed shareholder distribution was between $57 and $61. In light of its analysis, Goldman Sachs advised the board that the $55 Haft group offer and the $58.50 KKR offer were inadequate because they did not carry a control premium or adequately compensate Kroger shareholders for their loss of equity. The board also reviewed material prepared by the board's special counsel. Counsel advised the board that the KKR offer posed potential antitrust problems due to KKR's ownership interest in the Safeway chain of supermarkets with which Kroger competed in several markets. Upon the advice of the company's financial and legal advisors and upon its conclusions that restructuring would better serve Kroger's "constituencies" (defined as shareholders, employees and the community) and would in no way prevent the acceptance of an adequate offer in the future, the board voted to reject the Haft group and KKR offers, formally adopted the restructuring proposal, and authorized management to proceed with restructuring. Kroger publicly disclosed its rejection of the Haft group and KKR offers and its intention to proceed with restructuring on September 23, 1988, and by letter dated September 26, 1988, advised Kroger shareholders of the specifics of the special dividend.

On October 4, 1988, KKR returned to Kroger with a revised offer which consisted of two alternatives. In exchange for each share of Kroger common stock, KKR offered a package of cash, debt and equity valued at $64 before restructuring and a similarly-constituted package of cash, debt and equity valued at $61.50 after restructuring.

The Kroger board of directors met on October 7 to consider KKR's revised proposal. Goldman Sachs advised the board that KKR's revised offer was inadequate, based on its earlier analysis of the restructuring plan and on confidential inquiries, made to Goldman Sachs after KKR submitted its revised offer, which suggested that Kroger's market value was higher and that a sale of the company in the future would bring a such higher price. The board voted to reject KKR's revised offer upon Goldman Sach's assessment of its adequacy, because of the inherent antitrust problems, because the special dividend had already been declared, and because, under the restructuring plan, the shareholders would retain their equity interests in the company and, even under the worst-case scenario, the company would remain solvent. Kroger announced its rejection of KKR's revised offer on October 8 and on October 11, KKR withdrew its offer.

The cash portion of the special dividend was distributed on October 28, 1988, and the debenture was distributed on December 12 to

shareholders of record at the close of business on October 14, 1988.

The first shareholder action instituted against Kroger and its board of directors was filed on September 15, 1988, three days after the FTC announced its approval of the Haft group's Hart-Scott-Rodino application and two days after Kroger issued its press release disclosing the board's contemplation of a restructuring plan. The complaint charged the defendants with self-dealing and breach of fiduciary duties and sought declaratory and injunctive relief or, in the alternative, damages. Similar claims were advanced by Kroger shareholders in five subsequent actions. By entries dated September 23 and October 17, 1988, these actions were consolidated,[1] and by entry dated October 4, the law firms of Abbey & Ellis, Wolf, Popper, Ross, Wolf & Jones, Berger & Montague, P.C., and Gene Mesh & Associates were appointed to serve as co-lead counsel for the plaintiffs in the consolidated action.[2]

On October 7, 1988, the plaintiffs filed a consolidated amended complaint in which they sought, alternatively, injunctive or compensatory relief, charging the defendants with unfair dealing, self-dealing, gross overreaching, breach of fiduciary duties, and deception in connection with the restructuring plan. On October 17, the plaintiffs filed a motion for a preliminary injunction in which they sought to restrain implementation of the restructuring plan and to compel Kroger to negotiate with the Haft group and KKR.

Proceedings on the plaintiffs' motion for a preliminary injunction were postponed when settlement negotiations began in earnest. On November 7, 1988, the defendants and three of the four co-lead counsel appointed to represent the plaintiffs in the consolidated action entered into a Settlement Agreement in Principle evidencing their agreement to settle the action with certain improvements to the restructuring plan. On January 24, 1989, the same parties filed a Stipulation and Agreement of Settlement and Compromise ("settlement agreement").[3] The parties to the settlement agreement therein represented that three of four co-lead counsel and twenty of twenty-three law firms representing plaintiffs in the action agreed to settlement terms after considering the benefits to the plaintiffs embodied in the settlement agreement, the desirability of the terms of settlement, the risks of litigation, and the conclusions of counsel that the settlement was fair, reasonable, adequate and in the best interests of the plaintiffs. The settlement agreement was conditioned on maintenance of the action as a class action under Civ. R. 23(B)(1) and 23(B)(2). The parties to the agreement, therefore, sought certification of the action as a class action; court approval of the settlement as fair, reasonable and adequate; dismissal of the action with prejudice; an injunction permanently restraining members of the plain-tiffs' class as certified from pursuing further action against the defendants; and an award of attorneys' fees and expenses, payable by Kroger, in an amount not to exceed $1.275 million.

By entry dated January 24, 1989, the trial court, without a hearing, ordered that the action be maintained as a class action under Civ. R. 23(B)(1) and 23(B)(2) for purposes of settlement only. The court designated the "settling plaintiffs" as class representatives and their counsel as class counsel and defined the plaintiffs' class as all holders or beneficial owners of Kroger common stock at the close of business on September 13, 1988, or their successors in interest. The court's order further provided for a hearing on the settlement and on the application for fees and expenses and directed the manner of notice to members of the plaintiffs' class of the pendency of the action, the class-action determination, the settlement hearing, and the right of class members to appear or to object to the settlement.

A hearing was held on March 15, 1989, on the fairness, reasonableness and adequacy of the settlement and on the application for fees and expenses. By entry dated March 28, 1989, the trial court approved the settlement as fair, reasonable and adequate, dismissed the action with prejudice, awarded plaintiffs $1.275 million in attorneys' fees and expenses, and permanently enjoined members of the plaintiffs' class from instituting any action asserting claims "which were or could have been asserted in the Action or which arise now or hereafter out of the Action, the Settlement (except for compliance with the Settlement)[,] the Restructuring or any matters, transactions or occurrences referred to in the pleadings in the Action or the Stipulation, including any claims relating to the disclosures made to Kroger shareholders in connection with these matters." T.d. 84.

From the January 24 class-action determination and the March 28 approval of the settlement and award of fees end expenses, the

appellants have taken the instant appeal in which they advance four assignments of error.

### I.

The appellants contend in their first assignment of error that the trial court abused its discretion in certifying the action as a class action and enjoining the prosecution of an independent action for damages without an evidentiary hearing. In their second assignment of error, the appellants challenge the trial court's certification of the action as a class action under Civ. R. 23(B)(1) and 23(B) (2). He address these challenges together and find them to be well taken.

No person can be bound, consistent with the principles of due process of law guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution, by a judgment in an action in which he was not a party unless, *inter alia*, his interests have been adequately protected. *Hansberry v. Lee* (1940), 311 U.S. 32, 61 S. Ct. 115; *William Penn Mgt. Corp. v. Provident Fund for Income, Inc.* (E.D. Pa. 1975), 68 F.R.D. 456. A class action represents an exception to the rule that only parties may be bound by a judgment. The procedures governing class actions must, therefore, conform to the requirements of due process, "permit[ting] certification only in those cases in which a class can be bound and in which courts in subsequent actions would hold, consonant with due process, that *res judicata* barred \*\*\* further litigation by class members on the cause of action." *Horton v. Goose Creek Indep. Sch. Dist.* (C.A. 5, 1982), 690 F.2d 470, 486 n. 29, certiorari denied (1983), 463 U.S. 1207, 103 S.Ct. 3536 (citing *Hansberry, supra*, and Fed. R. Civ. P. 23 [c][3] [advisory committee note]); see, also, *Eisen v. Carlisle & Jacquelin* (C.A. 2, 1968), 391 F.2d 555; *Gomez v. Board of Ed.* (N.D. Ill. 1987), 117 F.R.D. 394.

An action may be certified as a class action if the trial court finds by a preponderance of the evidence that the Civ. R. 23 criteria have been met. *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St. 3d 91, 521 N.E.2d 1091. The decision to grant or deny certification of a class action is committed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of some demonstration that the court abused its discretion, i.e., that the court "completely misconstrue[d] the letter and spirit of the law \*\*\* ." *Id.* at 99, 521 N.E.2d at 1099 n. 10; see, also, *Ojalvo v. Board of Trustees* (1984), 12 Ohio St. 3d 230, 466 N.E.2d 875.

Civ. R. 23 implicitly requires that an identifiable class exist and that the class representatives be members of the class. *Warner, supra*. Civ. R. 23(A) sets forth four prerequisites to a class action:

"(1) The class must be so numerous that joinder of all members is impracticable;

"(2) There must be questions of law or fact common to the class;

"(3) The claims or defenses of the representative parties must be typical of the claims or defenses of the class; and

"(4) The representative parties must fairly and adequately protect the interests of the class."

Finally, the action must fall within one of the categories of actions defined in Civ. R. 23(B).

When a class action is certified under Civ. R. 23(B)(3), class members must be afforded the opportunity to opt out of the class upon request. Civ. R. 23(C)(2). A judgment rendered in a class action certified under Civ. R. 23(B)(1) or 23(B)(2), however, binds all members of the class. Therefore, the interests of those affected by the judgment rendered in a class action certified under Civ. R. 23(B)(1) or 23(B)(2) must be carefully scrutinized and the Civ. R. 23 criteria must be strictly applied to ensure that the interests of absent parties who are bound by the action are protected. *Hansberry, supra; Dierks v. Thompson* (C.A. 1, 1969), 414 F.2d 453; *Eisen, supra; Issen v. GSC Ent., Inc.* (N.D. Ill. 1981), 508 F.Supp. 1278.[4]

### A.

We address first the Civ. R. 23(A) prerequisites to maintenance of a class action. The appellants concede satisfaction of the Civ. R. 23(A)(1) requirement that "the class [be] so numerous that joinder of all members is impracticable." We find that Civ. R. 23(A)(2), which requires the presence of "questions of law or fact common to the class," has also been satisfied because the action arose from a "common nucleus of operative facts." See *Marks v. C.P. Chemical Co., Inc.* (1987), 31 Ohio St. 3d 200, 202, 509 N.E. 2d 1249, 1253. The record before us discloses, however, antagonism between the "settling plaintiffs," who have been designated as the representative parties, and certain members of the plaintiffs' class which weighs against satisfaction of the Civ. R. 23(A)(3) requirement that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class," and the Civ. R.

23(A)(4) requirement that the "representative parties *** fairly and adequately protect the class." See *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.* (C.A. 7, 1985), 756 F.2d 1274; *Berman v. Narragansett Racing Assn., Inc.* (C.A. 1, 1969), 414 F.2d 311, certiorari denied, (1970), 396 U.S. 1037, 90 S. Ct. 682. (An action cannot be maintained as a class action in the presence of substantial conflicts of interest among members of the class that go to the subject matter of the action.)

### 1.

Intraclass antagonism may be analyzed under Civ. R. 23(A)(3) or 23(A)(4). *Horton, supra.* The Civ. R. 23(A)(3) typicality requirement is designed to protect absent class members, *Marks, supra*, by ensuring that the claims or defenses of the representative parties and the class members are so interrelated that the interests of absent class members will be fairly and adequately protected. *General Tel. Co. v. Falcon* (1982), 457 U.S. 147, 157, 102 S. Ct. 2364, 2370 n. 13; *Thonen v. McNeil-Akron, Inc.* (N.D. Ohio 1986), 661 F. Supp. 1271, 1274.[5]

As we noted *supra*, the trial court, in its January 24, 1989, order certifying the action as a class action, designated as representative parties the "settling plaintiffs," *i.e.*, those members of the plaintiffs class who were parties to the settlement agreement, and defined the plaintiffs' class as all holders or beneficial owners of Kroger common stock at the close of business on September 13, 1988. The entry of judgment approving the settlement dismissed the consolidated amended complaint with prejudice and permanently enjoined class members from instituting any action asserting claims "which were or could have been asserted in the Action or which arise now or hereafter out of the Action, the Settlement (except for compliance with the Settlement)[,] the Restructuring or any matters, transactions or occurrences referred to in the pleadings in the Action or the Stipulation, *including any class relating to the disclosures made to Kroger shareholders in connection with these matters.*" T.d. 84 (emphasis added).

The consolidated amended complaint did not allege detrimental reliance on disclosures by Kroger to its shareholders in connection with the restructuring plan. The record before us, however, reveals that on September 29, 1988, six days after Kroger announced its rejection of the Haft group offer and KKR's original offer and its intention to proceed with restructuring and three days after Kroger sent a letter to shareholders detailing the restructuring plan, a local newspaper reported the recommendation of an officer in the trust department of a local bank that his clients sell their shares prior to Kroger's distribution of its special dividend if KKR ceased to pursue its acquisition efforts. The majority, if not all, of the approximately 140,000 shares of Kroger common stock held by the bank in trust were sold between September 29 and October 11, 1988, when KKR withdrew its second offer. In addition, after the trial court certified the action as a class action but prior to approval of the settlement, the court received, in the form of objections to the settlement, letters from four stockholders who represented that, because they were dissatisfied with the original terms of the debenture portion of the special dividend, the shores of Kroger common stock that they held on September 13, 1988, were sold after Kroger rejected KKR's second offer and before distribution of the special dividend and that-they would have retained their shares under the terms of the debentures as revised pursuant to the settlement agreement. Therefore, the holders of a significant number of shares of Kroger common stock, who ore members of the plaintiffs' class by virtue of their status as shareholders on September 13, 1988, disposed of their shares prior to distribution of the special dividend to shareholders of record as of October 14, 1988, based upon their assessment of the terms of the debentures as originally conceived and as outlined in Kroger's September 26 letter to shareholders.

There is nothing in the record before us to suggest that any of the settling plaintiffs disposed of his stock prior to distribution of the special dividend in reliance on disclosures by Kroger regarding the restructuring plan. In fact, the substance of the settlement agreement, which incorporates purported "improvements" to the terms of the debenture portion of the dividend, suggests otherwise. Therefore, the settling plaintiffs, who on behalf of absent class members joined in a settlement that permanently enjoined the assertion of claims based on disclosures by Kroger in connection with the restructuring plan, were not in a position to assert such claims on behalf of absent class members whom they purported to represent.[6] Consequently, we are unable to conclude on this record that the claims of the settling plaintiffs were "typical" of the claims of absent class

members who sold their shares prior to distribution of the special dividend such that the interests of those absent class members were fairly and adequately protected. See, *e.g., Thonen, supra* (Claims of class representatives who did not sign accord-and-satisfaction agreements were not typical of the claims of class members who signed accord-and-satisfaction agreements because the class representatives were not in a position to assert, concommitent with their breach-of-contract claims, that the accord-and-satisfaction agreements were unenforceable).

### 2.

Our determination *supra*, that the intraclass antagonism demonstrated in this record between the settling plaintiffs and absent class members who sold their shares prior to distribution of the special dividend stands in the way of satisfaction of the typicality requirement, also influences our determination that the Civ. R. 23(A)(4) requirement of adequate representation has not been met under the present circumstances.[7] The requirement that the representative parties fairly and adequately protect the interests of absent class members is the foundation of all representative actions. *Gomez, supra.* The purpose of the requirement is to ensure due process to class members who will not have their day in court. *Id.; Marks, supra* (citing *Augusta v. Marshall Motor Co.* [N.D. Ohio 1978], 453 F. Supp. 912). Because a judgment entered in a class action determines the rights of absent class members, it is necessary to eliminate to the extent possible the likelihood of a collusive action and the likelihood that the representative parties have interests antagonistic to the interests of other members of the class. *Eisen, supra*; see, also, *Hansberry, supra; Pomierski v. W. R. Grace & Co.* (N.D. Ill. 1967), 282 F. Supp. 385. The interests of the representative parties must, therefore, be coextensive with the interests of absent class members, and the representative parties cannot have interests antagonistic to the interests of others in the class. *Gomez, supra; Warner, supra.*

Examination of the Civ. R. 23(A)(4) requirement of adequate representation entails an inquiry into the adequacy of counsel and the adequacy of the representative parties. *Marks, supra.* The appellants do not contest the competence or experience of class counsel. However, our examination of the record discloses the presence of intraclass antagonism between settling plaintiffs and other members of the plaintiffs' class which precludes a finding that the representation offered by the settling plaintiffs is adequate.

To ensure that the interests of the representative parties are coextensive with and not antagonistic to the interests of absent class members, all class members must benefit from the relief sought. *Gomez, supra* at 402. When the relief sought by the representative parties cannot be thought to be what is desired by other members of the class, it is a violation of due process to permit the representative parties to obtain a judgment binding those class members. *Hansberry, supra; Dierks, supra*; see, *e.g., Green v. Santa Fe Ind.* (S.D.N.Y. 1979), 82 F.R.D. 688 (Representation was not adequate when the representative parties sought rescission of a merger and absent class members had accepted the acquiring corporation's offer or sought appraisal of their shares); accord *Guttman v. Braemer* (S.D.N.Y. 1970), 51 F.R.D. 537; *Maynard, Merel & Co. v. Carcioppolo* (S.D.N.Y. 1970), 51 F.R.D. 273; see, also, *Phillips v. Klassen* (C.A. D.C. 1974), 502 F.2d 362, certiorari denied (1974), 419 U.S. 996, 95 S. Ct. 309. (Denial of class certification is appropriate when class members hold divergent views as to whether they have been injured or benefitted).

In the instant case, the settling plaintiffs obtained certification of the action as a class action for settlement purposes only upon their representation that the terms of the settlement agreement were fair, adequate and reasonable. Therefore, the interests of the settling plaintiffs lay in settling the action pursuant to the terms of the settlement agreement.[8] Central to the settlement agreement are changes to the terms of the debenture portion of the special dividend that was distributed to shareholders of record as of October 14, 1988. The changes in the terms of the debentures made pursuant to the settlement agreement confer no benefit upon members of the plaintiffs' class who sold their shares prior to October 14, 1988, and to the extent that their shares were sold in reliance upon Kroger's representation of the terms of the debentures in its September 26, 1988, letter to shareholders, improvements to the terms of the debentures may be perceived as working an economic harm.

The record also discloses, again in the form of objections to the settlement, that the interests of the settling plaintiffs in settling the action pursuant to the terms of the settlement agreement were not coextensive with and, in some instances, were in conflict with the inter-

ests of other members of the class. Three members of the class, including the appellants, found the benefits attributed to the changes in the terms of the debentures under the settlement agreement to be illusory end the representation of the settling plaintiffs, in agreeing to the settlement, to be inadequate:

Plaintiffs' class member Malcolm Dubin unsuccessfully sought to intervene in the action, and all three objectors sought to litigate rather thin settle the action. A fourth class member objected to the award of attorneys' fees and expenses on the basis that the litigation was groundless; a fifth class member expressed his displeasure with any settlement of the action, requesting that the action instead be dismissed; and two other class members, without elaboration, requested exclusion from the plaintiffs' class.

As we noted at the outset, a party seeking certification of a class action bears the burden of demonstrating by a preponderance of the evidence that the Civ. R. 23 criteria have been met. See *Warner, supra.* With respect to the Civ. R. 23(A)(4) requirement of adequate representation, the party who seeks designation as a class representative does not have an affirmative duty to demonstrate that all or even the majority of class members consider his representation to be adequate, and the silence of absent class members cannot be taken as a sign of disapproval. *Eisen, supra.* A different situation is presented, however, when absent class members inform the court of their displeasure with the representation offered by the representative party. *Id.; see, e.g., Shulman v. Ritzenberg* (D.C.D.C. 1969), 47 F.R.D. 202 (Representation was inadequate and a class action could not be maintained when absent class members informed the court by affidavit that they considered the representative party's interests antagonistic to their interests and his representation inadequate).

The instant action was certified as a class action for settlement purposes only, thus defining the interests of the settling plaintiffs. By way of objections to the settlement, absent class members informed the court of their conflicting interests, of their displeasure with the Settlement, and of their dissatisfaction with the settling plaintiffs' representation. Therefore, on the basis of the evidence before us, settlement of the action under the terms of the settlement agreement cannot be thought to be what is desired by those members of the class who sold their shares prior to distribution of the special dividend, those who objected to the settlement, and those who wish to litigate the action. Accordingly, we cannot conclude on this record that, with respect to those class members, the representation of the settling plaintiffs was adequate.

## B.

The fundamental flaw in the proceedings below was the failure of the trial court to hold a hearing to explore the effect of the intraclass antagonism revealed in the form of objections to the settlement and to determine whether and in what manner the action might be maintained as a class action. Although an evidentiary hearing is not always required prior to certification of a class action, the due-process protections of notice and an opportunity to be heard must be afforded to absent class members prior to class action certification when, as here, the record before the trial court suggests that the Civ. R. 23 requirements have not been satisfied. *Warner, supra.*

Intraclass antagonism need not be fatal to the maintenance of an action as a class action. *Horton, supra; Guttman, supra.* Class actions serve a useful function in eliminating repetitious litigation and providing relief for small claimants, *Eisen, supra,* and the existence of the class-action procedure suggests a policy in favor of making class actions available to litigants when appropriate. *Horton, supra.* Due process requires, however, that courts adopt procedures to protect the interests of absent class members before purporting to bind them, *Hansberry, supra; Horton, supra,* and Civ. R. 23 provides the court with the means to do so. See Civ. R. 23(D); *Horton, supra.* For example, Civ. R. 23(C)(1) authorizes a court to conditionally certify an action as a class action and then, prior to its decision on the merits, alter or amend its order of certification or decertify the action if representation is found to be inadequate. See *Horton, supra.* The interests of absent class members may also be protected by dividing the class into subclasses, see *Guttman, supra,* or by limiting the scope of the class. See, Civ. R. 23(C)(4); *Pomierski, supra.* In an appropriate case, a class action may also be certified under Civ. R. 23(B)(3), thus permitting those class members who so desire to opt out of the class. See Civ. R. 23(C)(2); *Eisen, supra; Thonen, supra.*

In some instances, an action may be maintained as a class action despite intraclass antag-

onism when the views of dissenting members of a plaintiffs' class are adequately represented by the defendants. For example, in *Horton v. Goose Creek Indep. School Dist.*, *supra*, absent members of a plaintiffs' class consisting of students enrolled in the school district dissented from the representative parties' constitutional challenge to the school district's canine contraband detection program. The United States Court of Appeals for the Fifth Circuit found the interests of the representative parties in asserting the constitutional claims to be antagonistic to the interests of absent class members in not asserting any claim. The court held, however, that the action could be maintained as a class action when the position of the dissenting class members was forcefully and energetically asserted by the defendant, which argued in favor of the program, and when the danger of collusion was minimized by the defendant's vigorous opposition to class certification. *Id.* at 487-88; see, also, *Dierks, supra* (In a class action by former employees of a corporation to determine rights under a corporation trust, due process was satisfied when the defendants, trustees of the trust, actively supported the construction of the trust favored by the dissenting members of the plaintiffs' class). In the instant case, however, the defendants are in complete accord with the settling plaintiffs in their desire for certification of the action as a class action for purposes of the settlement and for settlement of the action pursuant to the terms of the settlement agreement. On the state of the record before us, we are unable to find that the claims of the settling plaintiffs are typical of the claims of absent class members who sold their shares prior to distribution of the special dividend on October 14, 1988, or that the interests of those class members or the interests of absent class members who object to the settlement or who wish to litigate the action have been adequately protected. We, therefore, hold that the trial court abused its discretion in certifying the action as a class action and, accordingly, sustain the first and second assignments of error.

## II.

The appellants contend in their third assignment of error that the trial court abused its discretion in approving the settlement as fair, adequate and reasonable. We agree.

A class action cannot be settled unless class members have been afforded notice of the proposed settlement and the trial court has determined, after a hearing on the matter, that the settlement is fair, adequate and reasonable. Civ. R. 23(E); *Thompson v. Midwest Foundation Indep. Physicians Assn.* (S.D. Ohio 1988), 124 F.R.D. 154; *Bronson v. Board of Ed.* (S.D. Ohio 1984), 604 F. Supp. 68. "In assessing the fairness, adequacy and reasonableness of a proposal to settle a class action, the trial court must consider:

(1) the fairness and reasonableness of the proposed settlement to those affected by it;

(2) the adequacy of the settlement to the class; and

(3) whether the settlement proposed is in the public interest."[9] *Williams v. Vukovich* (C.A. 6, 1983), 720 F.2d 909. The determination of whether a settlement is fair, adequate and reasonable is committed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of some demonstration that the trial court abused its discretion. *Id.*

We note at the outset that the settlement proposed and approved in the proceedings below was expressly conditioned on maintenance of the action as a class action under Civ. R. 23(B)(1) and 23(B)(2), We held under the appellants' first and second assignments of error that the action was improperly maintained as a class action when, on the state of the record, the Civ. R. 23(A)(3) requirement of typicality and the Civ. R. 23(A)(4) requirement of adequate representation had not been satisfied. Therefore, along with the class-action certification, the settlement must fall.

Our determination *supra*, that the claims of the settling plaintiffs were not demonstrably typical of the claims of absent class members who sold their shares prior to distribution of the special dividend, and that there was an insufficient basis to conclude that absent class members were adequately represented, is of further significance in the context of court approval of a class-action settlement. With respect to the requirement that the settlement of a class action be fair and reasonable to those that it affects, the trial court must be sensitive to the objections of class members and ensure that the interests of the representative parties and their counsel are not unjustifiably advanced at the expense of absent class members. *Williams, supra.* In holding that the action was not properly maintained as a class action, we found typicality lacking because the settling plaintiffs, who on behalf of absent class members joined in

a settlement that permanently enjoined claims based on Kroger's disclosures regarding restructuring, were not in a position to assert such claims. Our determination that the representation offered by the settling plaintiffs was not proved adequate was based, in part, on our conclusion that changes to the debenture portion of the special dividend made pursuant to the settlement conferred no benefit on absent class members who sold their shares prior to distribution of the special dividend and that improvements to the terms of the debentures may be perceived as working an economic harm. We are thus led inexorably to the conclusion that the trial court, in foiling to ensure that the interests of the representative parties were not unjustifiably advanced at the expense of absent class members, abused its discretion in approving the settlement. We, therefore, sustain the third assignment of error.

### III.

In their fourth and final assignment of error, the appellants challenge the trial court's award of attorneys' fees and expenses. This challenge, as with the challenge advanced in the third assignment of error, is effectively directed against the fairness, adequacy and reasonableness of the settlement and, on the same basis, succeeds.

Attorneys' fees and expenses in the amount of $1.275 million, payable by Kroger to plaintiffs' counsel, were awarded pursuant to the terms of the settlement agreement. The settlement was expressly conditioned on maintenance of the action as a class action, but, on the state of the record before us, the action cannot be so maintained. Consequently, the award of fees and expenses, along with the settlement agreement pursuant to which fees and expenses were awarded, must be vacated. Accordingly, we sustain the fourth assignment of error.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and this decision.

SHANNON, P.J., DOAN and KLUSMEIER, J.J.

---

[1] The following actions were consolidated under the caption *In re The Kroger Co. Shareholders Litigation*, Common Pleas No. A-8807634: *Schneider v. The Kroger Co.*, Common Pleas No. A-8807634: *McDevitt v. The Kroger Co.*, Common Pleas No. A-8807671; *Peller v. Everingham*, Common Pleas No. A-8807659; *Kaufman v. Everingham*, Common Pleas No.

A-8807938; *Weintraub v. The Kroger Co.*, Common Pleas No. A-8807979; and *Klein v. The Kroger Co.*, Common Pleas No. A-8808286.

[2] Abbey & Ellis, Wolf, Popper, Ross, Wolf & Jones, and Berger & Montague, P. C., were appointed co-lead counsel for the plaintiffs upon motion of the plaintiffs in the *Schneider* and *McDevitt* actions; Gene Mesh & Associates was appointed as co-lead counsel upon motion of the *Peller* and *Weintraub* plaintiffs.

[3] Gene Mesh & Associates, appointed as co-lead counsel for the action as consolidated and serving as counsel for plaintiffs-appellants Kenneth Peller and Sidney Kaufman in this appeal, declined to join in the Settlement Agreement in Principle or in the Stipulation and Agreement of Settlement and Compromise.

[4] Civ. R. 23 is identical to Fed. R. Civ. P. 23, with the exception of Civ. R. 23(F), which provides for the aggregation of claims in determining jurisdiction and is not at issue here. Federal authority is, therefore, instructive in interpreting the Ohio rule. *Marks v. C. P. Chemical Co., Inc.* (1987), 31 Ohio St. 3d 200, 201, 509 N.E.2d 1249, 1251-52.

[5] It has been suggested that the typicality requirement has no significance independent of the Civ. R. 23(A)(2) commonality requirement when "[b]oth serve as guideposts for determining whether *** maintenance of a class action is economical and whether the [representative party's] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co, supra* at 157, 102 S. Ct. at 2370, n. 13; see, also, *Thonen, supra* at 1273-74. However, under the express terms of Civ. R. 23(A)(3), commonality may be predicated on either a factual or a legal basis. We find commonality in the instant case on the basis of the standard set forth in *Marks, supra*, in which the Ohio Supreme Court held that the commonality requirement does not mandate commonality among all class members on all questions of law and fact or, like Civ. R. 23(B)(3), require the predominance of common issues of fact or law, and that commonality exists when an action arises from a "common nucleus of operative facts." *Id.* at 202, 509 N.E.2d 1253. (quoting *Miles v. N.J. Motors* (1972), 32 Ohio App. 2d 350, 291 N.E.2d 758); see, also, *Warner, supra*.

[6] The merits of such a claim are not relevant to our examination of the trial court's exercise of its discretion in certifying the class action. *Ojalvo, supra* at 233, 466 N.E. 2d at 877; see, also, *Eisen, supra*.

[7] The requirement of adequate representation has also been linked with the commonality and typicality requirements of Civ. R. 23(A)(2) and 23(A)(3), with the distinction that the adequate-representation requirement additionally touches on concerns about the competence of counsel and conflicts of interest. See *General Tel. Co., supra* at 157, 102 S. Ct. at 2370 n. 13; *Thonen, supra* at 1274. Often, when typicality is lacking, adequate representation is also absent. See,

*e.g., Issen, supra* (The claims of the representative party are not typical and his representation is inadequate when the relief sought by the representative party, *viz.*, rescission of a merger or damages, differs from the interests of those he seeks to represent, *viz.*, shareholders who have tendered their shares pursuant to the merger).

[8] In this sense, the interests of the settling plaintiffs are aligned with those of the defendants and not with those of the members of the plaintiffs class who have informed the court of their displeasure with the settlement.

[9] Other factors to be considered, which may be seen to be encompassed by the broader considerations set forth in *Williams, supra*, include the complexity, expense and likely duration of litigation; the stage of the proceedings and the amount of discovery completed; the risks of litigation; the resources of the defendant; the judgment of experienced trial counsel; the plaintiffs' likelihood of success on the merits balanced against the amount and form of relief offered in settlement; and the objections of class members. See *Thompson, supra; Bronson, supra*.