[Cite as *Safi v. Cent. Parking Sys. of Ohio, Inc.*, 2015-Ohio-5274.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SAFI V. SAFI, | : | APPEAL NOS. C-150021 |
| | | C-150029 |
| Plaintiff-Appellee, | : | TRIAL NO. A-1209104 |
| vs. | : | *O P I N I O N.* |
| CENTRAL PARKING SYSTEM OF OHIO, INC., | : | |
| | : | |
| and | | |
| | : | |
| THE CAR BARN GARAGE, | | |
| Defendants-Appellants. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 18, 2015

*Statman, Harris & Eyrich, LLC, Jeffrey P. Harris* and *Sylvie Derrien*, for Plaintiff-Appellee,

*Hahn Loeser & Parks* LLP*, Robert J. Fogarty and Derek E. Diaz,* for Defendant-Appellant Central Parking System of Ohio, Inc.,

*McCaslin, Imbus & McCaslin*, *Thomas J. Gruber* and *Michael P. Cussen*, for Defendant-Appellant The Car Barn Garage.

Please note:  this case has been removed from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1} Defendants-appellants Central Parking System of Ohio, Inc., ("Central Parking") and The Car Barn Garage ("Car Barn") appeal a decision of the Hamilton County Court of Common Pleas granting the motion of plaintiff-appellee Safi W. Safi for class certification under Civ.R. 23. We hold that the trial court improperly granted the motion and reverse the trial court's judgment.

## I.    Factual Background

{¶2} Safi filed a class action complaint against Central Parking and Car Barn setting forth causes of actions for statutory violations, breach of contract, conversion, trespass to chattels, and negligence. The complaint alleged that Central Parking, as the agent for the owner of a private tow-away zone, caused Car Barn to tow Safi's vehicle, and that acting in concert, appellants had charged fees in excess of the maximum amounts set forth in former R.C. 4513.60(E) to release the vehicle. Safi further contended that appellants had a practice of systematically overcharging owners of towed vehicles to reclaim them. Safi sought repayment of the alleged unlawful charges for himself and all others similarly situated, a declaration that appellants had acted unlawfully, and an injunction to prevent further violations.

{¶3} Safi subsequently filed a motion for class certification under Civ.R. 23. He asked the trial court to certify the following class:

> All owners of a motor vehicle having a gross vehicle weight rating equal to or less than 10,000 pounds that were removed from a private tow-away zone located in Ohio, (as set forth in ORC 4513.60) under authority of division (B)(2) of ORC 4513.60 that were charged an

amount exceeding the maximum amount allowed under ORC 4513.60(E) to reclaim such motor vehicle from storage.

{¶4} The record shows that Central Parking leased, managed or operated a number of parking lots, including one located at 2704 Vine Street, Cincinnati, Ohio. Central Parking required parking pass holders to display their parking passes at all times while parked in one of its lots, and required daily parkers to display their receipts for payment.

{¶5} If Central Parking employees found a car parked in violation of its policies, they would enter the vehicle's information into the company's database and take pictures of the car. They would then leave a parking ticket under the vehicle's wiper blade with instructions about how to pay or to dispute the ticket.

{¶6} Central Parking had a policy not to tow a vehicle until its fourth unpaid parking violation. It contracted with Car Barn to do the actual towing. When the owner of the car went to retrieve his or her car, Central Parking required Car Barn to collect fees for the first three unpaid parking violations, as well as charges for towing.

{¶7} In October 2008, Safi signed a monthly contract to park a single vehicle at the Vine Street lot. According to Central Parking, Safi often parked a second vehicle at the lot without paying for it. Central Parking employees told him numerous times that he had to pay to park a second vehicle in the lot.

{¶8} On October 13, 2012, Safi's second vehicle, a pickup truck, was found at the lot with no proof of payment. Because the truck already had three unpaid parking violations, Car Barn towed the truck at Central Parking's direction. To reclaim his truck, Car Barn required Safi to pay a $90 towing charge, a $12 labor charge, $8 in taxes, and a charge labeled as "PDP" of $203, for a total of $313. Car

Barn employees explained that the "PDP" charge covered past due parking tickets charged by Central Parking.

{¶9} Former R.C. 4513.60(E) provided that the owner of a towed vehicle could reclaim it "upon payment of any expenses or charges incurred in its removal, in an amount not to exceed ninety dollars, and storage, in an amount not to exceed twelve dollars per twenty-four-hour period; except that the charge for towing shall not exceed one hundred fifty dollars * * * ." Additionally, former R.C. 4513.60(B)(1)(a) required the owner of a private tow-away zone to post a sign that discloses the maximum amounts that may be charged.

{¶10} In his complaint, Safi alleged that appellants had a practice of systematically overcharging motor vehicle owners to reclaim their towed vehicles in violation of former R.C. 4513.60. Even though Central Parking had posted the required sign stating the maximum amounts that could be charged under the statute, customers were routinely charged in excess of those amounts for past due parking violations in addition to expenses and storage charges. On behalf of himself and others similarly situated, Safi sought repayment or restitution of the unlawful charges, a declaration that appellants had acted unlawfully, and an injunction to prevent further violations.

{¶11} Central Parking filed counterclaims against Safi in which it set forth causes of action for trespass and breach of contract. It sought to recover the remaining unpaid fees for the parking violations and other damages. Safi filed a motion to dismiss Central Parking's counterclaims, which the trial court granted. The court did not state its reasons for granting the motion at that time. Later, in its decision on the motion for class certification, the court stated that "Central Parking's * * * counterclaims could not be maintained because the essence of the Complaint

4

was about the very payment by Plaintiff of the Excess Charges that arose from the alleged trespasses and breach of contract claims." It added that "Thus, by the time Plaintiff and any Class Member drive off the Car Barn lot, Central Parking has been paid all amounts due to it and has no claims against Plaintiff or any Class Member."

{¶12} In granting Safi's motion for class certification, the trial court certified the class as set forth in Safi's motion, appointed Safi as the class representative, and appointed his counsel as class counsel. The trial court's entry granting the motion was a final, appealable order under R.C. 2505.02(B)(5), and appellants have filed timely appeals from the court's judgment.

{¶13} Central Parking presents one assignment of error for review, and Car Barn presents two. In all three assignments of error, they contend that the trial court erred in granting Safi's motion for class certification for several reasons. They argue that Safi failed to meet his burden to show that all of the requirements for class certification set forth in Civ.R. 23 were met. These assignments of error are well taken.

## II. A Rigorous Analysis

{¶14} A class action is an exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties. *Felix v. Ganley Chevrolet, Inc.*, ____ Ohio St.3d ____, 2015-Ohio-3430, ____ N.E.3d __, ¶ 25; *In re Kroger Co. Shareholders Litigation*, 70 Ohio App.3d 52, 59, 590 N.E.2d 391 (1st Dist.1990). Therefore, to fall within the exception, the party bringing the class action must affirmatively demonstrate that each requirement of Civ.R. 23 has been satisfied. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 2.

{¶15} A party seeking certification bears the burden of proving by a preponderance of the evidence that the proposed class meets each of the requirements in the rule. *Cullen* at paragraph three of the syllabus; *Kroger Co. Shareholders* at 59. A trial court must conduct a rigorous analysis when determining whether to certify a class, and may grant certification only after resolving all relevant factual disputes and finding that sufficient evidence proves that all of the requirements have been satisfied. *Cullen* at paragraph one of the syllabus. In resolving a factual dispute, a court may examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirements of the rule are satisfied. *Id.* at paragraph two of the syllabus.

{¶16} The trial court has broad discretion in determining whether to certify a class action, and that decision will not be disturbed on appeal absent an abuse of discretion. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998); *Kroger Co. Shareholders* at 59-60. But the trial court's discretion in deciding whether to certify a class is not unlimited. It must exercise its discretion within the framework of Civ.R. 23. *Hamilton* at 70.

### III. Prerequisites for Class-Action Certification

{¶17} Civ.R. 23(A) sets forth six requirements that must be satisfied before the trial court may certify a class action: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) questions of law or fact common to the class must exist; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of three Civ.R. 23(B) requirements must

6

be met. *Hamilton* at 71; *Harrison v. Johnston Coca-Cola Bottling Group*, 1st Dist. Hamilton No. C-070665, 2008-Ohio-3572, ¶ 7.

{¶**18**} Safi sought to certify the class under Civ.R. 23(B)(3). An action under this section is the "so-called 'damage' action." *Hamilton* at 79, quoting *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 95-96, 521 N.E.2d 1091 (1988). It adds "to the complex-litigation arsenal class actions for damages designed to secure judgments binding on all class members save those who affirmatively elected to be excluded." *Hamilton* at 79, quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Its purpose is to "bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweighs the interests of individual autonomy." *Hamilton* at 80. Civ.R. 23(B)(3) provides that a court may certify a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### IV. *Typicality/Adequacy of Representation*

{¶**19**} Under Civ.R. 23(A)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The purpose of this provision is to protect absent class members. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 202, 509 N.E.2d 1249 (1987). This requirement is met where no express conflict exists between the representative party and the class. *Id.*

{¶**20**} Similarly, Civ.R. 23(A)(4) requires that the class representative must fairly and adequately represent the interests of the class. This requirement is crucial to ensuring due process to members of the proposed class who will not have their individual day in court. *Id.* at 203; *Kroger Co. Shareholders*, 70 Ohio App.3d at 63,

590 N.E.2d 391. A representative is deemed adequate so long as his interest is not antagonistic to that of other class members. *Marks* at 203.

{¶21} To ensure that the interests of the representative parties are coextensive with and not antagonistic to the interests of the absent class members, all class members must benefit from the relief sought. *Kroger Co. Shareholders* at 64. "When the relief sought by the representative parties cannot be thought to be what is desired by other members of the class, it is a violation of due process to permit the representative parties to obtain a judgment binding on those class members." *Id.*

{¶22} In this case, the putative class consisted of people who had trespassed on Central Parking's property on four occasions and whose vehicles had been towed. Each instance of trespass constitutes a separate violation for which the trespasser may owe contract and tort damages. When a trespasser retrieved his or her car after it had been towed, Car Barn only collected fees for the first three violations. Therefore, the putative class members still owe for the fourth parking violation, plus any damages. Further, the suit claimed that requiring the payment of the fees for the first three parking infractions violated former R.C. 4513.60(E) and sought the return of those funds. If the funds are returned, Central Parking would be owed the fees for all four parking violations.

{¶23} After his car was towed, Safi sought a full refund from Central Parking. After some discussions with Central Parking, he withdrew his request, stating that, "We are going in another direction." He then filed a class action lawsuit.

{¶24} After the suit was filed, Central Parking offered to settle by sending full refunds to the identified members of the class. Safi rejected that offer. In addition to

the refunds to the class members, he sought $12,500 for himself as the class representative, $150,000 in attorney fees, and $5,000 in costs.

{¶25} To qualify as a class member, a litigant would have to affirmatively assert that his or her vehicle was parked illegally on up to four separate occasions and was towed. Thus, a class action would expose class members to potential liability in excess of what they had already paid. That risk would place Safi's interests at odds with those of class members who would opt to settle and avoid the risks of litigation.

{¶26} Even though the trial court dismissed Central Parking's counterclaims, the issues raised in those counterclaims are still relevant to the determination of the motion for class certification. First, the dismissal order is not final and is subject to revision at any time before the entry of the final judgment. *See Gardner v. Ford*, 1st Dist. Hamilton No. C-150018, 2015-Ohio-4242, ¶ 4.

{¶27} Additionally, Central Parking still asserts its right to a set-off against any damages awarded to class members. Safi acknowledged that should he prevail in this action, Central Parking would be able to instigate a collection action against him for the monies he owed for failing to pay for parking when he received his tickets. The same reasoning applies to all of the potential class members.

{¶28} The facts of this case are similar to the facts in *Carlin v. Genie of Fairview Park*, 8th Dist. Cuyahoga No. 48593, 1985 Ohio App. LEXIS 6353 (Apr. 11, 1985). In that case, one of the defendants owned a private lot with a designated tow-away zone. The lot owner had contracted with a towing company to tow unauthorized vehicles from its lot. The plaintiffs illegally parked on the lot and their vehicles were towed. They brought a suit seeking to certify the case as a class action on behalf of all persons whose cars had been towed.

9

{¶29} The trial court denied class certification, and the Eighth Appellate District affirmed. It found that the typicality requirement was not met, stating that "[s]ince the defendants-appellees have allegedly towed vehicles from [the] property for an extended period of time, there are probably many atypical claims or defenses to illegally parking on private property." *Id.* at *10. It further stated that "[t]hose persons whose cars were towed * * * each sustained different damages, including but not limited to storage and towing fees, not to mention inconvenience." *Id.*

{¶30} The court also found that the plaintiffs were not adequate representatives of the class. It stated that it was not sufficient for the plaintiffs to "show the existence of a common potential injury[.]" The plaintiffs also had to "demonstrate that the principal relief sought is not repugnant to class members." *Id.* at *11, quoting *Blankenship v. Omaha Pub. Power Dist.*, 195 Neb. 170, 178-179, 237 N.W.2d 86 (1976). There was a "real and substantial conflict over the desirability of the remedy sought," because absent class members "would prefer to see no action brought at all if the relief envisioned by the representative were ultimately granted." *Carlin* at *11, quoting *Blankenship* at 179.

{¶31} The court noted that in the case before it the lot owner had counterclaimed against the plaintiffs for trespass and had requested both compensatory and punitive damages. Thus, "[t]he price for membership in the class to receive damages for conversion is payment for damages for trespass which could conceivabl[y] exceed the award for conversion." *Carlin*, 8th Dist. Cuyahoga No. 48593, 1985 Ohio App. LEXIS 6353, at *11-12.

{¶32} The same logic applies in this case. The potential for a conflict of interest between the class representative and the absent class members, as well as the exposure of class members to liability renders this case inappropriate for class

certification. Because Safi failed to satisfy the requirements under Civ.R. 23(A)(3) and (4), the trial court erred in granting his motion for class certification.

### V. Predominance/Superiority

{¶33} We also hold that Safi failed to satisfy the predominance and superiority requirements. To certify a class under Civ.R. 23(B)(3), the party seeking certification must show that the questions of law or fact common to the class predominate over individual claims, and that a class action is superior to any other available method of adjudication. *Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 29; *Schmidt v. Avco Corp.*, 15 Ohio App.3d 81, 87, 472 N.E.2d 721 (1st Dist.1984), *aff'd*, 15 Ohio St.3d 310, 473 N.E.2d 822 (1984). Civ.R. 23(B)(3) states that the "matters pertinent" to these findings include (a) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.

{¶34} The predominance test is an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his or her own interest and the economy achievable by allowing a multiple party dispute to be resolved as a class action. *Schmidt* at 87. For common questions of law or fact to predominate, "it is not sufficient that such questions merely exist; rather, they must present a sufficient aspect of the case." *Cullen* at ¶ 30, quoting *Marks*, 31 Ohio St.3d at 204, 509 N.E.2d 1249. They must also be capable of resolution for all members in a single adjudication. *Cullen* at ¶ 30.

{¶35} The class that Safi sought to certify included persons who had had their cars towed from a Central Parking lot and who were allegedly required to overpay for the return of their vehicles. That allegation is the only common issue among the class members. A class action would not resolve the individual issues relating to their parking violations and whether their cars were towed properly. For each class member, four mini-trials would be necessary to determine whether any and how many parking violations had occurred. Those issues would likely overshadow the common issues regarding towing and render that issue insignificant in the litigation. Safi also raised tort and equitable claims that would involve varying fact patterns with different defenses and damages for the individual class members. Thus, common issues of law and fact do not predominate over the individual issues.

{¶36} Whether a class action is the superior method of adjudication requires a comparative evaluation of other available procedures to determine if the judicial time and energy involved would be justified. *State ex rel. Davis v. Pub. Emp. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28. The necessity for a class action is a valid consideration for the trial court. *Id.* at ¶ 32-33. "[T]he 'need' for class action treatment * * * may be considered a vital, if not determinative, consideration as need inevitably relates to the problems of superiority, fairness, and efficiency." *Id.* at ¶ 32, quoting *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 346 (10th Cir.1973).

{¶37} In this case, no need exists for a class action. When towing repeat offenders, Central Parking no longer collects fees for past due violations. Corrective measures taken by the defendant in a lawsuit are relevant to the determination of the necessity of a class action. *See Davis* at ¶ 34.

{¶38} The only thing preventing these refunds is Safi's demand for $162,500 for himself and his attorneys, an amount many times more than the total amount of parking fees collected. Because a class action would only generate more costs, class certification would actually leave class members in a worse position than if they had pursued individual claims. Additionally, Central Parking has a dispute resolution process that often results in favorable outcomes for people parking in its lots and that would cost far less than class litigation.

{¶39} Finally, Safi has not shown that a class action in this case is economically sensible. Litigation costs and expenses could ultimately exceed the amount of the final judgment, leaving little relief for the class members. Consequently, Safi has failed to show that a class action is a superior method of adjudication over any other method as required by Civ.R. 23(B)(3).

### VI. Summary and Disposition

{¶40} In sum, Safi failed to demonstrate that all of the requirements for certification of a class action had been met. Consequently, we hold that the trial court erred in granting his motion for class certification. We sustain Central Parking's sole assignment of error and Car Barn's two assignments of error. We reverse the trial court's judgment granting Safi's motion and remand the cause to the trial court for further proceedings.

Judgment reversed and cause remanded.

HENDON, P.J., and FISCHER, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.